UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEN JOHANSEN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL GROUP INC., SPANISH QUOTES, INC. D/B/A WESPEAKINSURANCE,<br><br>              Defendants. | NO.<br><br>**DEMAND FOR JURY** |

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Ken Johansen (hereinafter referred to as "Plaintiff"), by his undersigned counsel, for this class action Complaint against Defendants, Liberty Mutual Group Inc. ("Liberty Mutual") and Spanish Quotes, Inc. d/b/a WeSpeakInsurance ("Spanish Quotes"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (collectively referred to as "Defendants"), alleges as follows:

**I.      INTRODUCTION**

1. <u>Nature of Action</u>.  Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**II.      PARTIES**

2. Plaintiff, Ken Johansen, is a citizen of Ohio, residing in Franklin County, Ohio.

3. Defendant, Liberty Mutual, is a Delaware corporation with its principal place of business in Boston, Massachusetts.  Liberty Mutual, thus, is a citizen of Massachusetts.  Liberty Mutual is registered to do and is doing business in Massachusetts and throughout the United States.

4. Defendant, Spanish Quotes, is an Arizona corporation with its principal place of business in Tempe, Arizona. On information and belief, Spanish Quotes does business in Massachusetts and throughout the United States.

### III.   JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

6. This Court has personal jurisdiction over Liberty Mutual because it has submitted to Massachusetts jurisdiction by registering with the Secretary of the Commonwealth to do business in the state of Massachusetts, and the wrongful acts alleged in this Complaint were committed in Massachusetts.

7. This Court has personal jurisdiction over Spanish Quotes because it has purposefully availed itself of the privilege of conducting business activities in the state of Massachusetts, including by transacting with Massachusetts businesses.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Liberty Mutual resides in this District.

### IV.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d).

11. The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry thereby indicating their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the

Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

13. Federal Communication Commission ("FCC") promulgated regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

14. The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

## V.   FACTUAL ALLEGATIONS

### A.   Factual Allegations Regarding Defendants

15. Liberty Mutual is an American diversified global insurer and the second-largest property and casualty insurer in the United States. *See* http://www.naic.org/documents/web_market_share_150302_2014_property_lob.pdf (last visited July 1, 2015).

16. Liberty Mutual offers a wide range of insurance products and services. Its "Personal Insurance business unit sells automobile, homeowners, and other types of property and casualty insurance coverages to individuals in the United States." *See* http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=162456 (last visited July 7, 2015).

17. Spanish Quotes is an "insurance shopping network designed to provide Spanish speaking American with quotes on auto and home insurance." *See* http://www.hablamosseguros.com/faq-en/ (last visited July 7, 2015).

18. Spanish Quotes does not actually sell insurance policies but instead matches "people with agents who want their business." *Id.*

19. On information and belief, Spanish Quotes operates under unincorporated alter egos, such as WeSpeakInsurance and HablamosSeguros.

20. WeSpeakInsurance's Facebook page directs viewers to their website, http://www.hablamosseguros.com/. *See* https://www.facebook.com/pages/We-Speak-Insurance/346062782223308 (last visited July 7, 2015).

21. The privacy policy available on the website http://www.hablamosseguros.com/ is titled "WeSpeakInsurance.com & HablamosSeguros.com Privacy Policy" and contains the statement "[t]his Web site contains links to other sites that are not owned or controlled by Spanish Quotes, Inc." *See* http://www.hablamosseguros.com/privacy-policy/ (last visited July 7, 2015).

22. Spanish Quotes is the Registrant Organization and Admin Organization for the hablamosseguros.com domain. *See* https://who.godaddy.com/whoisstd.aspx?domain=hablamosseguros.com&prog_id=GoDaddy (last visited July 7, 2015).

23. Spanish Quotes is also the Registrant Organization and Admin Organization for the wespeakinsurance.com domain. *See* https://who.godaddy.com/whoisstd.aspx?domain=wespeakinsurance.com&prog_id=GoDaddy (last visited July 7, 2015).

24. Liberty Mutual contracts with third party aggregators, including Spanish Quotes, to increase the volume of its customers.

25. Part of the strategy of these third party aggregators, including Spanish Quotes, for increasing the volume of Liberty Mutual's customers involves the use of telephone solicitation calls.

26.    On information and belief, Spanish Quotes has a contractual relationship with Liberty Mutual that permits it to transfer prospective customers directly to Liberty Mutual's call centers.

27.    Liberty Mutual is legally responsible for ensuring that Spanish Quotes' telephone solicitation activities comply with the TCPA, even if Liberty Mutual does not make the calls themselves.

28.    The FCC concurs that sellers such as Liberty Mutual may not avoid liability by outsourcing telemarketing because doing so "would leave consumers in many cases without an effective remedy for telemarketing intrusions." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (2013).

29.    Under the standards outlined in the FCC's Order, and by other Courts interpreting that Order, Liberty Mutual is directly liable to Plaintiff and members of the classes as well as vicariously liable through theories of agency such as actual authority and ratification.

30.    Although Spanish Quotes made the calls to Plaintiff and took his information, Liberty Mutual also participated in the calls by setting the guidelines and parameters for customers who would be acceptable for Spanish Quotes to transfer to Liberty Mutual.

31.    For example, Liberty Mutual directed the timing, geographic location, and driving history requirements for prospective customers sent to its call center.

32.    Liberty Mutual ratified Spanish Quotes' actions by accepting the benefits of Spanish Quotes' activities through accepting prospective customers generated by Spanish Quotes through its illegal telephone solicitation activities.

**B.**    **Factual Allegations Regarding Plaintiff**

33.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

34.    Plaintiff placed his residential telephone number, (614) 791-XXXX, on the National Do-Not-Call Registry on July 2, 2003.

35. On December 23, 2014, Plaintiff received a live telephone solicitation call on his residential telephone line marketing auto insurance products.

36. The caller identified herself as Lupe of Insurance Solutions.

37. Lupe informed Plaintiff that the purpose of the call was to provide him with an auto insurance quote.

38. After asking Plaintiff some basic qualifying questions, Lupe transferred the call to Brendan, who identified himself as a licensed insurance agent in the state of Ohio.

39. Brendan informed Plaintiff that he worked for Insured Street, an insurance agency located at 3700 Park East Drive in Beachwood, Ohio.

40. During the call, Plaintiff requested information from Brendan regarding the name of the company that had initially contacted him.

41. Brendan informed Plaintiff that he did not know which company transferred the call to him but that he worked in a call center that gets overflow from Liberty Mutual.

42. Furthermore, Brendan informed Plaintiff that the lead transfer information that was provided to him when Plaintiff's call was transferred read "Liberty Mutual inbound auto."

43. Brendan also provided Plaintiff with the lead identification number 266115 and invitation number 7XA165365120.

44. As a result of the call with Brendan, Plaintiff contacted Liberty Mutual on December 24, 2014.

45. After navigating through Liberty Mutual's automated telephone system, Plaintiff was eventually transferred to a Liberty Mutual employee named Justin Kindy.

46. Plaintiff informed Mr. Kindy of the events of the previous day, as described in paragraphs 35 through 43, above.

47. Mr. Kindy informed Plaintiff that he was adding Plaintiff's name, address, and residential telephone number, (614) 791-XXXX, to Liberty Mutual's do-not-call list.

48. Mr. Kindy further informed Plaintiff that it usually takes one to two weeks to be removed from Liberty Mutual's call list but that doing so would stop any future calls to Plaintiff's residential telephone number from Liberty Mutual.

49. After adding Plaintiff to Liberty Mutual's do-not-call list, Mr. Kindy transferred Plaintiff to his supervisor, Adam Cardona.

50. Plaintiff requested information from Mr. Cardona regarding the name of the entity that provided Plaintiff's lead information to Liberty Mutual.

51. Mr. Cardona informed Plaintiff that he did not have access to any specific information regarding the entity that provided the lead but could instead explain the process by which Liberty Mutual obtains leads through aggregators.

52. Mr. Cardona explained that aggregators generally obtain leads from websites into which customers enter their contact information. The aggregators then sell those leads to ten to fifteen different companies, including Liberty Mutual. Once Liberty Mutual purchases a lead, it contracts with a third party to call the lead and offer the lead a quote from a Liberty Mutual agent. The third party would then transfer the call to Liberty Mutual's call center.

53. After explaining Liberty Mutual's lead generation process, Mr. Cardona asked Plaintiff if he entered his contact information into any such website.

54. Plaintiff informed Mr. Cardona that not only did he not enter his information into any website but the information that was recited to Plaintiff by the aggregator was out of date by well over 18 months.

55. Notwithstanding his presence on Liberty Mutual's do-not-call list and the National Do-Not-Call Registry, Plaintiff, continued to receive numerous telephone solicitation calls on his residential telephone line in 2015.

56. For instance, on February 17, 2015, Plaintiff received a live telephone solicitation call on his residential telephone line marketing Liberty Mutual's insurance products.

57. The caller identified himself as Jason Stacy from the Quality Assurance Department of Auto Insurance Services.

58. Mr. Stacy informed Plaintiff that the purpose of the call was to market a new insurance rate reduction program for the state of Ohio.

59. After confirming that Plaintiff still resided in Ohio, Mr. Stacy transferred the call to Jeanie Aeilts, who identified herself as an insurance agent at Liberty Mutual.

60. Ms. Aeilts confirmed that she worked directly for Liberty Mutual and provided Plaintiff with her direct telephone number and Liberty Mutual's address in Phoenix, Arizona—14415 S 50th Street, Suite 150.

61. During the telephone call, Plaintiff asked Ms. Aeilts if she knew from where the telephone call originated.

62. Ms. Aeilts could not identify the source of the call but informed Plaintiff that "there are services that will call around and ask if you're looking for auto or homeowners insurance and transfer you through to us."

63. At Plaintiff's request, Ms. Aeilts checked Liberty Mutual's notes regarding Plaintiff's residential telephone number, (614) 791-XXXX, and confirmed that, on January 22, 2015, Liberty Mutual received a request to cease contacting Plaintiff and add his residential telephone number to its no call list.

64. Ms. Aeilts then informed Plaintiff that it generally takes 6-8 weeks to be added to Liberty Mutual's do not call list.

65. On February 18, 2015, Plaintiff received another live telephone solicitation call on his residential telephone line marketing Liberty Mutual's insurance products.

66. This call was virtually identical to the call Plaintiff received from Mr. Stacy on February 17, 2015.

67. The caller identified himself as David from the Quality Assurance Department of Auto Insurance Services.

68. David informed Plaintiff that the purpose of the call was to market a new insurance rate reduction program for the state of Ohio.

69. David then transferred the call to Mingo Rubio, who identified himself as an insurance agent at Liberty Mutual.

70. Mr. Rubio confirmed that he worked for Liberty Mutual and provided Plaintiff with his direct telephone number and Liberty Mutual's address in Phoenix, Arizona—14415 S 50th Street, Suite 150.

71. Plaintiff informed Mr. Rubio, that he was on the National Do-Not-Call Registry and requested that Mr. Rubio confirm that he was also on Liberty Mutual's do not call list.

72. Mr. Rubio confirmed that Plaintiff's residential telephone number, (614) 791-XXXX, was in fact on Liberty Mutual's do not call list.

73. Furthermore, Mr. Rubio informed Plaintiff that he had again submitted Liberty Mutual's TCPA form indicating that Plaintiff was on the National Do-Not-Call Registry and that he did not want to receive any additional calls from Liberty Mutual.

74. Notwithstanding his do not call requests on December 24, 2014, February 17, 2015, and February 18, 2015, Plaintiff continued to receive telephone solicitation calls on his residential telephone line from, or on behalf of, Liberty Mutual.

75. Plaintiff received additional calls from Liberty Mutual on or around February 18, 2015, February 20, 2015, and March 16, 2015.

76. These telephone solicitation calls also marketed Liberty Mutual's auto insurance products.

77. On each occasion, Plaintiff was connected to a Liberty Mutual insurance agent and requested that Liberty Mutual cease calling him.

78. On each occasion, Plaintiff also requested that the Liberty Mutual agent confirm that his residential telephone number, (614) 791-XXXX, was on Liberty Mutual's do not call list.

79. On or around June 12, 2015, Plaintiff received a letter from Jeanne Schafer, a Customer Care Case Manager at Liberty Mutual, regarding the above-described calls.

80. Ms. Schafer's letter identified WeSpeakInsurance as the vendor who made the above-described calls to Plaintiff.

81. Each of the above-described calls occurred after Plaintiff had registered his residential telephone number with the National Do-Not-Call Registry.

82. Plaintiff did not provide prior express consent to receive telephone solicitation calls on his residential telephone line from, or on behalf of, Defendants.

83. Defendants are responsible for making the above-described telephone solicitation calls.

84. Defendants have initiated a significant number of telephone solicitation calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Ohio and throughout the entire United States.

85. Defendants have made a significant number of telephone solicitation calls to persons who have explicitly requested that Defendants stop calling them in Ohio and throughout the entire United States.

86. Defendants intend to continue to make telephone solicitation calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Ohio and throughout the entire United States.

87. Defendants intend to continue to make similar telephone solicitation calls to persons who have explicitly requested that Defendants stop calling them in Ohio and throughout the entire United States.

88. Plaintiff and all members of the Classes, defined in paragraph 89, below, have been harmed by the acts of Defendants because their privacy has been violated as they were subjected to annoying and harassing calls that constitute a nuisance as well as a conversion of their property.

### VI.   CLASS ACTION ALLEGATIONS

89. <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of a National Classes defined as follows:

> <u>National Do-Not-Call Class</u>:  All persons in the United States to whom:  (a) Defendants and/or any person or entity acting on

> Defendants' behalf initiated more than one telephone solicitation call; (b) promoting Defendants' goods or services; (c) in a 12-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> <u>Internal Do-Not-Call Class</u>:  All persons in the United States to whom:  (a) Defendants and/or any person or entity acting on Defendants' behalf initiated more than one telephone solicitation call; (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

Excluded from Classes are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

90.   <u>Numerosity</u>.  The Classes are each so numerous that joinder of all members is impracticable.  On information and belief, the Classes each have more than 100 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

91.   <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

   a.   As to Plaintiff and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiff and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry;

      b.     As to Plaintiff and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiff and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry, thus entitling Plaintiff and members of the National Do-Not-Call Class to treble damages;

      c.     As to Plaintiff and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R. § 64.1200(d) by initiating any call for telephone solicitation purposes to Plaintiff and members of the Internal Do-Not-Call Class without following procedures for maintaining a list of persons who request not to receive telephone solicitation calls;

      d.     As to Plaintiff and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telephone solicitation calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A), thus entitling Plaintiff and the Internal Do-Not-Call Class to treble damages;

      e.     Whether Defendants are liable for telephone calls to persons on the National Do-Not-Call Registry initiated by Defendants' affiliates, agents, and/or other persons and entities acting on Defendants' behalf;

      f.     Whether Defendants are liable for telephone calls to persons on Defendants' internal do-not-call lists initiated by Defendants' affiliates, agents, and/or other persons and entities acting on Defendants' behalf;

      g.     Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf should be enjoined from violating the TCPA in the future.

92. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims, like the claims of Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

93. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Classes.

94. <u>Predominance</u>.  Defendants have engaged in a common course of conduct toward Plaintiff and members of the Classes.  The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

95. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

96. <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII.   FIRST CLAIM FOR RELIEF
### (Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)

97.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

98.   The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiff and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

99.   As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the National Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

100.   Plaintiff and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any residential telephone subscriber who has registered his or her telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## VIII. SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry)**

101.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

102.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiff and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

103.  As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowing and/or willful violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the National Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call made to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

104.  Plaintiff and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any telephone subscriber who has registered their telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## IX.   THIRD CLAIM FOR RELIEF
**(Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)**

105. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any call for telephone solicitation purposes to Plaintiff and members of the Internal Do-Not-Call Class, without following procedures for maintaining a list of persons who request not to receive telephone solicitation calls ("internal do-not-call list"). This includes Defendants' failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

107. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Internal Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

108. Plaintiff and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telephone solicitation calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## X.   FOURTH CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)**

109. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

110. The foregoing acts and omissions of Defendants and/or their affiliates, agents,

and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(d), by initiating any call for telephone solicitation purposes to Plaintiff and members of the Internal Do-Not-Call Class without following procedures for maintaining a list of persons who request not to receive telephone solicitation calls.  This includes Defendants' failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

111. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowing and/or willful violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Internal Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

112. Plaintiff and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telephone solicitation calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Classes, prays for judgment against Defendants as follows:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.  An award to Plaintiff and the Classes of damages, as allowed by law;

G.  An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

H.  Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XII.   DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  July 8, 2015.

>Respectfully submitted,
>
>BRODERICK LAW, P.C.
>
>By:   */s/ Anthony I. Paronich*
>Edward A. Broderick
>Email:  ted@broderick-law.com
>Anthony Paronich
>Email:  anthony@broderick-law.com
>99 High St., Suite 304
>Boston, Massachusetts 02110
>Telephone:  (617) 738-7080
>Facsimile:  (617) 830-0327
>
>Matthew P. McCue, Esq.
>Email: mmccue@massattorneys.net
>THE LAW OFFICE OF MATTHEW P. MCCUE
>1 South Avenue, Suite 3
>Natick, Massachusetts 01760
>Telephone:  (508) 655-1415
>Fascimile:  (508) 319-3077

Beth E. Terrell
Email:  bterrell@tmdwlaw.com
Mary B. Reiten
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
  & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and the Proposed Class*