UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEN JOHANSEN, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br><br>LIBERTY MUTUAL GROUP, INC.; and SPANISH QUOTES, INC. d/b/a WESPEAKINSURANCE,<br><br>   Defendants,<br>LIBERTY MUTUAL GROUP, INC.,<br><br>   Crossclaimant,<br><br> v.<br><br>SPANISH QUOTES, INC. d/b/a WESPEAKINSURANCE,<br><br>   Crossdefendant,<br><br>LIBERTY MUTUAL GROUP, INC., LIBERTY MUTUAL INSURANCE COMPANY,<br><br>   Third-party Plaintiffs,<br><br> v.<br><br>PRECISE LEADS, INC., and DIGITAS, INC.,<br><br>   Third-party Defendants | Civil Action No.  1:15-cv-12920-ADB |

MEMORANDUM AND ORDER

December 8, 2016

BURROUGHS, D.J.

I.       **Introduction**

In this putative class action, Plaintiff Ken Johansen ("Johansen" or "Plaintiff") seeks to represent a class of individuals claiming violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") as against Liberty Mutual Group, Inc. ("Liberty Mutual" or "Liberty")[1] and Spanish Quotes, Inc. d/b/a WeSpeakInsurance ("Spanish Quotes").  Johansen claims that Liberty Mutual and Spanish Quotes called or caused him to be called multiple times in violation of the TPCA, even though his phone number was properly listed on the National Do-Not-Call Registry and even after he had specifically told Liberty Mutual that he should not be called again.

Liberty Mutual denies any liability to Johansen, but asserts in its Answer and Third-Party Complaint that, if it is held liable to Plaintiff, Liberty is entitled to indemnification from Digitas, Inc. ("Digitas") and Precise Leads, Inc. ("Precise Leads"), pursuant to contracts between the companies.  [ECF No. 61 at 19].  Liberty Mutual also claims that, if it is liable to Johansen for damages for violations of the TCPA, those damages were caused by Precise Leads and/or Digitas' breaches of contract and/or negligence.  Id.

According to Liberty Mutual's Third-Party Complaint, Liberty contracted with Digitas and Precise Leads to generate customer leads for Liberty by directing consumers interested in auto insurance to Liberty.  Id. at 21.  Liberty claims that it believed all consumers who were referred to it for auto insurance had affirmatively initiated contact with Digitas or Precise Leads. According to Liberty, Digitas and Precise Leads were required to act in a competent and

---

[1] Liberty Mutual Insurance Company is also a Third-Party Plaintiff against Digitas, Inc. and will be referred to together with Liberty Mutual Group, Inc., as "Liberty Mutual" or "Liberty."

professional manner and to comply with applicable law, including the TCPA, while generating consumer leads. Id. at 23-24.

Digitas has moved to dismiss Liberty Mutual's third-party claims against it, pursuant to Federal Rule of Civil Procedure 12(b)(6), based on four arguments. [ECF No. 68 and 69]. First, Digitas claims that it has mooted Johansen's claims against Liberty Mutual, and thus Liberty Mutual's claims against Digitas, by depositing $11,200 into an escrow account that Mr. Johansen may access upon this Court entering an order dismissing this lawsuit. [ECF Nos. 69 at 2]. Digitas has also deposited additional funds into the escrow account to cover any costs and agreed to certain demands for injunctive relief. Id. at 4. Digitas now requests that the Court dismiss Johansen's claims, as to him and the class, given that the named Plaintiff's claims are mooted as a result of Digitas' complete satisfaction of the pending claims. Digitas further argues that the Court should grant its motion to dismiss as against Liberty Mutual because Liberty failed to plead that it tendered its defense to Digitas, which was an express condition; Liberty's claim for indemnity is not ripe; and Liberty's negligence claim is barred by the economic loss doctrine. [ECF No. 69 at 10-13]. The Court will address each of these arguments in turn.

## II.     Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded facts in the light most favorable to the plaintiff and draws all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required to survive a motion to dismiss, "more than labels and conclusions" are required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. The

facts alleged must "raise a right to relief above the speculative level." Id. The plaintiff must "nudge[] [the] claims across the line from conceivable to plausible," or the claims will be dismissed. Id. at 570.

"The power of lower federal courts is limited to jurisdiction authorized by the Constitution and expressly conferred by Congress." Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003) (citations omitted). Under Article III, Section 2 of the Constitution, federal courts may only adjudicate live cases or controversies. Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997). "When a case is moot . . . a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). "A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 669 (2016) (quoting Knox v. Service Employees, 132 S.Ct. 2277, 2287 (2012)).

To assess whether a claim is moot, a court need first determine what the claimant seeks. Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 53 (1st Cir. 2015). A case is not moot if the issues presented are "live" or if the parties retain a "legally cognizable interest in the outcome." Knight v. Mills, 836 F.2d 659, 670 (1st Cir. 1987). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004). "[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." Id.;[2] Weaver's Cove Energy, LLC v. R.I. Coastal Res.

---

[2] Motions to dismiss based on mootness are typically brought pursuant to Rule 12(b)(1). Here, Digitas has moved to dismiss only against Liberty Mutual pursuant to Rule 12(b)(6) but nonetheless argues that its actions moot Johansen's claims as well. Given the Court's obligation

Mgmt. Council, 589 F.3d 458, 468 (1st Cir. 2009) ("We will only find a case moot if an intervening event 'makes it impossible for the court to grant any effectual relief.'") (quoting Gulf of Me. Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)).

### III.    Background

### a.    Relief Sought in Johansen's Complaint

Digitas argues that it has mooted Johansen's Complaint by providing to him all of the relief he sought.  [ECF No. 69].  To determine if Digitas has in fact provided Johansen with all of the relief sought, the Court must first look to the claims and the relief requested as set forth in Mr. Johansen's complaint.  Johansen brings claims against Liberty Mutual and Spanish Quotes on behalf of a putative class for violations of the TCPA.  [ECF No. 1].  He alleges that although he placed his telephone number on the National Do-Not-Call Registry on July 2, 2003, he thereafter received repeated telephone solicitations by or on behalf of Liberty Mutual.  He also claims that he continued to receive unwanted telephone calls on behalf of Liberty Mutual even after he specifically requested to be added to Liberty Mutual's internal do not call list.  For relief, Johansen seeks class certification, class-wide injunctive and declaratory relief, statutory damages, attorneys' fees and costs, and other court ordered relief against Liberty Mutual and Spanish Quotes.  [ECF No. 1 at 17-18].

### b.    Relief Offered by Digitas to Johansen

Next, the Court must look at the relief offered.  Digitas deposited $10,500 in the escrow account payable to Johansen, which represents the statutory maximum of $1,500 in damages for each of the seven unlawfully placed phone calls that Mr. Johansen claims to have received.

---

to examine its subject matter jurisdiction as to all parties, the Court will consider whether Johansen's claims are moot and whether the Court retains jurisdiction to hear this case.

[ECF No. 69 at 8].  In addition, Digitas deposited an additional $700 for costs to cover filing fees and the *pro hac vice* admissions for Johansen's attorneys.  Finally, Digitas deposited $5,000 to cover any additional costs.  Id. at 8-9.  According to Digitas, the escrow agreement provides that Johansen may receive the $11,200 upon entry of a final judgment or other order terminating his case and some portion of the additional $5,000 based upon a Court-approved bill of costs. Digitas represents that this reflects Johansen's maximum statutory damages.  Id.  In addition to financial relief, Digitas also agrees that it and its agents, including Digitas and Spanish Quotes, will be bound by an injunction prohibiting them from making or causing any person to make any solicitation call to the residential phone of plaintiff that would violate the TCPA.  Id. at 9.

Digitas argues that because "plaintiff no longer has any claim against Liberty, Liberty has no claim against Digitas."  [ECF No. 69 at 2].[3]  Digitas therefore argues that the "Third-Party Complaint can [] be dismissed, as can the rest of plaintiff's claims against all defendants upon entry of an [appropriate] order terminating the case…."  Id.

## IV.    Analysis

Digitas' mootness argument is premised upon a hypothetical posited in the Supreme Court's opinion in Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663 (2016) (henceforth, "Campbell-Ewald").  There, the Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."  Id. at 672.  In so holding, the Court also stated that "[w]e need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff,

---

[3] Liberty supports the position that Digitas has successfully mooted Johansen's claims, but disputes Digitas' contentions that it is otherwise entitled to prevail on the motion to dismiss Liberty Mutual's Third-Party Complaint.  [ECF No. 82].

and the court then enters judgment for the plaintiff in that amount. That question is appropriately reserved for a case in which it is not hypothetical." Id.

### a. Johansen's Claims Are Not Mooted by Digitas' Payment and Injunction Offer

Relying on the above-quoted dicta in Campbell-Ewald, Digitas has attempted to moot Liberty's claims against it by depositing funds and agreeing to an injunction for the benefit of Johansen. Digitas argues that the Campbell-Ewald majority opinion, where the Supreme Court identified but declined to rule on a hypothetical, coupled with language from the concurring and dissenting opinions, has "marked out a clear path for a defendant in a putative class action to satisfy plaintiff's claim and end the case."[4]  [ECF No. 69 at 5].

It is not at all evident, however, that Campbell-Ewald necessarily creates such a "clear path," particularly where the Supreme Court found it unnecessary to reach that question and its actual holding cuts squarely in the other direction by concluding that an unaccepted Rule 68 offer could not moot a plaintiff's claim.  136 S.Ct. at 672.  Campbell-Ewald also states that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." Id.

Here, there is no question that Johansen has rejected Digitas' offer of relief, arguably leaving a live claim of his own as well as a request to be allowed to show that class certification is appropriate.  Further, Johansen argues that Digitas' offer would fail to moot his claims even if a complete offer could moot his claims because he is still without declaratory relief, a class-wide

---

[4] The Court notes that, unlike in other cases where defendants have sought to moot a plaintiff's claims by depositing money in an account or with the Court for plaintiff's benefit, Digitas was not sued by the Plaintiff in this case.  Rather, Digitas is a third-party defendant that was sued by Liberty Mutual on the theory that Digitas is liable to Liberty Mutual for any potential damages in this case.  Digitas argues that its attempt to moot Johansen's claims should also effectively moot Liberty's claim as against Digitas.

injunction, or an admission of liability, and because the funds deposited by Digitas are only conditionally, and not immediately, available.  [ECF No. 83 at 1].  Johansen notes that he seeks to enjoin Liberty Mutual, Spanish Quotes, and all of their agents and affiliates from engaging in the conduct alleged in the Complaint, which the proposed injunction fails to do.  Id. at 17.  He also argues that even if the Court determines that Digitas has offered complete relief on his individual claims, he retains an interest in shifting fees and costs to other members of the class, a class representative incentive award, and the opportunity to pursue class certification.  Id. at 2.

Although there may be sound policy reasons for not allowing defendants or third-party defendants to stave off class litigation by picking off the named plaintiffs, in this case, Digitas' effort to moot Johansen's claims fails if only because Digitas has not shown that it has provided all of the relief sought by Johansen in his Complaint and there remains relief that can be granted by this Court.  Already, LLC v. Nike, Inc., 133 S.Ct. 721, 733 (2013) (J. Kennedy, concurring) (noting that party arguing for mootness has the burden of establishing that proposition).  Rather than analyze each element of relief sought by Plaintiff, a review of the injunctive relief requested by Plaintiff and that offered by Digitas is enough to establish that Digitas has not provided all of the relief sought by Plaintiff.  Thus, the case is not moot, even assuming that providing complete relief would moot the case, and putting aside the policy considerations.

In its motion to dismiss, Digitas agreed to an injunction that would prohibit it and its agents from making or causing any other person or entity to make any solicitation call to the residential telephone of Johansen that would be a violation of the TCPA.  In contrast to the narrow injunction offered by Digitas, Johansen seeks an injunction prohibiting "Defendants from placing calls to him and class members whose numbers are either on the National DNC registry or on Liberty Mutual's internal DNC list." (emphasis added) [ECF No. 83 at 17].  Thus,

Johansen's complaint asks that Defendants Liberty Mutual <u>and</u> Spanish Quotes <u>and</u> all of their

agents and affiliates be enjoined from placing such calls. <u>Id.</u> As Digitas' proposed injunction

would bind only Digitas and Defendant Spanish Quotes and does not include relief for Johansen

against Defendant Liberty Mutual and its agents, as requested by Johansen, it is clear that

Johansen has not received all of the relief he seeks, and therefore his claims are not moot. <u>See</u>

<u>Piro v. Exergen Corp</u>, No. 15-cv-11834, 2016 WL 1255630 at *6 (D. Mass. Mar. 29, 2016)

(stating that "[o]pen questions as to the adequacy of Exergen's self-designed corrective measures

preclude the Court from concluding, as a matter of law, that Exergen has addressed the Named

Plaintiffs and the Putative Class Members' injury in full.").

Additionally, the funds offered by Digitas potentially implicate the collateral source rule,

which allows a plaintiff, in some circumstances, to continue their lawsuit even if they have

received compensation for their injuries. "A plaintiff does not lose standing to sue a tortfeasor

just because a third party has already compensated her for the injury." <u>Merriam v. Demoulas</u>,

No. 11-10577-RWZ, 2013 WL 2422789 at *3 (D. Mass. June 3, 2013). In <u>Merriam</u>, the plaintiff

brought claims against trustees of a pension fund and the directors of the related company. The

trustees had lost $46 million on a bad investment that violated the terms of the pension plan. The

directors had the company make a restorative $46 million payment to the pension plan. The

<u>Merriam</u> court rejected defendants' argument that the restorative payment rendered plaintiff's

claims moot and noted that the point of the collateral source rule "is that a double recovery for

the injured plaintiff is better than a windfall for the tortfeasor." <u>Id.</u>; <u>see also</u> <u>In re State Street</u>

<u>Bank and Trust Co. ERISA Litig.</u>, 579 F.Supp.2d 512, 517 (S.D.N.Y. 2008) (denying motion to

dismiss for lack of standing where plaintiffs had received payment and noting that "[t]he premise

of State Street's motions—that an action is necessarily mooted when a plaintiff's damages are

reimbursed—is flawed.").  The collateral source rule, however, "may not apply to payments that

are made 'seeking to extinguish or reduce the obligation' that a tortfeasor owes a plaintiff."

Merriam, 2013 WL 2422789 at *3 (quoting Rest. 2d Torts, § 920A cmt. a.).  Here, there is an

open question as to whether the relief offered by Digitas, the Third-Party Defendant, reduces

primary defendant Liberty Mutual's damages or should be treated as a collateral source. Having

concluded, though, that the relief offered by Digitas does not moot Johansen's claims, the Court

need not now decide the impact of the collateral source rule, but notes that this uncertainty also

mitigates against dismissing Johansen's complaint as moot.

### b. Concluding that Johansen's Claims are Moot Would Also Contradict First Circuit Precedent

While Digitas relies heavily on the Campbell-Ewald hypothetical in support of the argument that

it has mooted Johansen's claims, it does so largely without reference to Federal Rule of Civil

Procedure 68, which underpins the Campbell-Ewald decision.  Federal Rule of Civil Procedure

68 provides, in pertinent part, that:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

(emphasis added).

Despite the dicta in Campbell-Ewald and the issues raised in the hypothetical, current

First Circuit precedent on Rule 68 undercuts Digitas' argument that its unaccepted settlement

offer moots Johansen's claims and criticizes the use of Rule 68 offers to moot a plaintiff's

claims.  See Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46 (1st Cir. 2015).

Bais Yaakov concerned alleged violations of the TCPA and a defendant's effort to moot a

plaintiff's claims by paying the plaintiff the defendant's calculation of the maximum statutory

damages, agreeing to injunctive relief and, unlike here, agreeing to pay attorney's fees.  Id. at 47.

The First Circuit reviewed the denial of a motion to dismiss based on mootness on a certified

question pursuant to 28 U.S.C. § 1292(b).  The issue before the First Circuit was whether

"ACT's tender of a Rule 68 offer mooted Bais Yaakov's case."  Id. at 50.  The Bais Yaakov

panel explained that its inquiry was limited to "determining whether the named plaintiff's

individual claim was indeed 'fully resolved'—and therefore mooted—by the tendering of the

Rule 68 offer."  Id. at 51.  The Bais Yaakov court upheld the district court's denial of the motion

to dismiss and held that a "rejected and withdrawn [Rule 68] offer of settlement of the named

plaintiff's individual claims in a putative class action made before the named plaintiff moved to

certify a class did not divest the court of subject matter jurisdiction by mooting the named

plaintiff's claims."  Id. at 46.

In so holding, the court stated that an unaccepted Rule 68 offer "cannot, by itself, moot a

plaintiff's claim" and explained that:

> We take this position because, when employed as ACT hopes to
> employ it here, an unaccepted Rule 68 offer is a red herring: it does
> not, in itself, provide any relief. And nothing in Rule 68—or any
> other rule—contemplates use of a rejected offer to secure dismissal
> of a case.  To the contrary, Rule 68 expressly specifies what
> happens to a rejected offer: it is deemed to be 'withdrawn,' and it
> is 'not admissible except in a proceeding to determine costs.'

Id. at 52 (quoting Fed. R. Civ. P. 68(b)).  The Bais Yaakov panel also rejected ACT's suggestion

that, when faced with a Rule 68 offer, a court should simply enter judgment on the defendant's

behalf in the same way the court would have if the offer had been accepted.  Id.  The panel noted that "the entire structure of [Rule 68] leaves it to the plaintiff to decide whether to accept the offer or risk having to pay 'the costs incurred after the offer was made,' even if the plaintiff wins the case."  Id.  This remains consistent with Campbell-Ewald where, the hypothetical notwithstanding, the Supreme Court, concluded that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."  136 S.Ct. at 672.

As in Bais Yaakov, Johansen has clearly rejected Digitas' offer of settlement and has not yet received any relief.  While avoiding reference to Rule 68, Digitas has attempted to distinguish this situation from Bais Yaakov and to realize the Campbell-Ewald hypothetical by depositing the funds in an escrow account at a bank and asserting that it no longer has any right to the funds.  [ECF No. 69 at 10 n. 2].  Consistent with First Circuit precedent and the non-binding nature of dicta, Digitas' effort fails given that the plaintiff has rejected the offer and is still without any of the relief sought through this lawsuit.  Digitas argues that the Court can remedy this by entering an order dismissing the case so that Johansen may collect on the escrowed funds.  This option is foreclosed by Bais Yaakov despite the language of the Campbell-Ewald hypothetical.  See Bais Yaakov, 798 F.3d at 52 (rejecting argument that Court should employ Rule 68 to moot plaintiff's claims and noting that "the entire structure of the rule leaves it to the plaintiff to decide whether to accept the offer or risk having to pay 'the costs incurred after the offer was made.'") (quoting Rule 68(d)).  Where, as here, the Plaintiff still does not have complete relief and has rejected an offer of settlement, the Court can neither conclude that the claims are moot nor that Rule 68 provides a vehicle for dismissing Plaintiff's claims.[5]

---

[5] This is not to say that the Court lacks the inherent power to enter judgment in favor of a plaintiff when the defendant unconditionally surrenders, which Digitas has not done here.  See Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1536 (2013) (J. Kagan, dissenting) ("To

This conclusion is also consistent with the reasoning underlying <u>Bais Yaakov</u>, which reflected the concern that use of Rule 68 offers to moot a plaintiff's claims would require courts "to make what in effect are qualitative assessments of the legal and factual merits of the claims, defenses and evidence" and "invites the qualitative assessment of the maximum available relief when a plaintiff rejects an offer, yet the defendant cites the making of the offer as proof of mootness." <u>Id.</u> at 52-3.  The panel opined that such determinations were properly made not under Rule 68, but through a motion to dismiss, summary judgment, or judgment on the pleadings.  <u>Id.</u>  The panel concluded that "[w]ere we to bless this approach, courts would find themselves ruling on the merits of claims under the guise of determining whether cases are moot."  <u>Id.</u>  The panel then rejected ACT's request that it engage in a merits determination to assess whether the offer gives to plaintiff less than what the pleadings sought to recover.  <u>Id.</u>

Upon remand to the district court in <u>Bais Yaakov</u>, following the First Circuit's ruling on the certified question, ACT, in reliance on the <u>Campbell-Ewald</u> hypothetical, deposited funds with the Court in a renewed effort to moot plaintiff's claims.  <u>Bais Yaakov of Spring Valley v. ACT, Inc.</u>, --- F.Supp.3d ---, No. 4:12-CV-40088-TSH, 2016 WL 2733104 at *1 (D. Mass. May 10, 2016) ("<u>Bais Yaakov II</u>").  In rejecting this proffer, the Court concluded that "[b]ecause the parties dispute whether $4,800 would fully satisfy Plaintiff's requested relief, I reject these attempts."  <u>Id.</u>  In so holding, the Court recognized that, although the First Circuit had affirmed

---

be sure, a court has discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory. But the court may not take that tack when the supposed capitulation in fact fails to give the plaintiff all the law authorizes and she has sought.").  As illustrated by the dispute between Digitas and Johansen regarding whether Johansen's claims are moot, Digitas has not unconditionally surrendered in this case, nor is it clear that even a total capitulation on the part of Digitas would allow the court to enter a judgment in favor of Johansen given the presence of Liberty and Digitas' status as a third party defendant.

the decision to deny ACT's motion to dismiss based on mootness, the First Circuit also criticized the idea of making a merits determination regarding the proper measure of damages when trying to determine whether a case is moot.  Id. at *5.  The Court held that where "the proper measure of damages remains in dispute, and Defendant has tendered less than the amount to which Plaintiff claims entitlement, the tender does not satisfy Plaintiff's claims."  Id. at *6.

Although Johansen and Digitas do not appear to dispute the measure of statutory damages, they do broadly dispute other issues relating to Johansen's claimed relief.  Because a Rule 68 offer of judgment is the improper procedural vehicle to resolve disputes over the proper measure of relief sought by a plaintiff, and consistent with Bais Yaakov, the Court declines to engage in a further merits assessment under Rule 68 to determine whether the offer provides all relief sought, thus potentially mooting Johansen's claims.  See also Stevenson v. Amazon.com, Inc., Civ. No. 15-13505-FDS, 2016 WL 2851316 at *5 (D. Mass. May 13, 2016) (finding claims not moot under Campbell-Ewald after defendant mailed and plaintiff rejected check for back wages where plaintiff disputed amount due); Piro v. Exergen Corp., No. 15-cv-11834-DJC, 2016 WL 1255630 at *4 (D. Mass. Mar. 29, 2016) (unaccepted refund offer insufficient to disrupt standing after Campbell-Ewald).

Opinions reached by other courts in this district do not counsel a different result.  In S. Orange Chiropractic Ctr., LLC v. Cayan, LLC, No. 15-13069-PBS, 2016 WL 1441791 at *4 (D. Mass. Apr. 12, 2016), the court found that defendant's tender to plaintiff mooted plaintiff's individual claim.  As distinguished from the instant case, however, the parties in S. Orange did not dispute that defendant had provided all of the relief sought by plaintiff.  Id.  Further, even though the lead plaintiff's individual claims had been mooted, Judge Saris allowed the class action to continue under the "inherently transitory" exception because it presented issues

otherwise likely to evade review.  Id. at *7.  Subsequently, Judge Saris denied defendant's

request for interlocutory review on the question of "whether a class action remains justiciable

after a defendant's attempt to "pick off" the named plaintiff," S. Orange, 2016 WL 3064054 at

*2, because "the courts to rule on this since Campbell-Ewald are in harmony: every attempt by a

defendant to 'pick off' the named plaintiff with hopes of mooting the proposed class action has

been rebuffed." Id. at *2.

Judge Sorokin's opinion in Demmler v. ACH Food Cos., Inc., Civ. No. 15-13556-LTS,

2016 WL 4703875 (D. Mass. June 9, 2016) is also distinguishable.  There, plaintiff sought

damages, an order that the product's label be modified, and attorney's fees on behalf of himself

and a class under Mass. Gen. Laws Ch. 93A, § 9(3) for the false labeling of barbecue sauce.  Id.

at *2.  In response, the defendant sent plaintiff's counsel an unrestricted check for its calculation

of the maximum statutory damages and noted that it had already removed the product from the

market.  Id.  Defendant then moved to dismiss or for summary judgment on the basis that the

Court lacked subject matter jurisdiction due to mootness based on its payment to plaintiff. Id. at

*1.  Unlike here, plaintiff had not filed a placeholder class certification motion when defendant

sent the check to plaintiff's counsel, nor had plaintiff sought class wide injunctive or declaratory

relief.  Id. at *7.  Although plaintiff's counsel rejected the check on the basis that it did not

provide relief for the class, the court concluded that, based on the claims plead by the plaintiff,

his claims were now moot.  Id. at *3.  The court concluded that Campbell-Ewald did not save

plaintiff's claims from mootness because the defendant actually tendered full relief to plaintiff

without restrictions and that the Court could offer no additional relief.  Id. at *4.  Unlike

Demmler, Johansen disputes that he has received all the relief to which he is entitled, he did file

a motion for class certification, and that there is still relief that could be afforded by the Court.

In sum, the Court finds that Digitas' attempt to moot Johansen's claims has failed and therefore denies Digitas' motion to dismiss as against Liberty.

**V.     Digitas' Motion to Dismiss Liberty Mutual's Third-Party Complaint**

Having concluded that Digitas has not mooted Johansen's claims, the Court must now decide whether the remaining arguments in support of Digitas' motion to dismiss as against Liberty Mutual's Third-Party Complaint are meritorious.  Digitas argues that Liberty Mutual's Claims II, IV, and VI must be dismissed for failure to state a claim.  The relationship between Liberty and Digitas is governed by the Master Services Agreement ("MSA") entered into between the two companies, as well as Statements of Work ("SOW") detailing particular projects under the MSA.  Digitas has raised three arguments in support of its motion to dismiss: 1) Liberty Mutual failed to tender its defense to Digitas, which is an express condition of Digitas' indemnity obligations; 2) Liberty Mutual's indemnity claim is not ripe; and 3) Liberty Mutual's negligence claim is barred by the economic loss doctrine.

**a.  Digitas' Motion to Dismiss Based on Liberty Mutual's Alleged Failure to Tender the Defense is Denied**

Digitas alleges that Liberty Mutual failed to provide it "the opportunity to complete control of the defense and settlement," and failed to tender its defense and, that as a result, Counts II and IV of the Third-Party Complaint should be dismissed for failure to satisfy a condition precedent.  [ECF Nos. 69 at 11; 69-4].  Liberty Mutual responds that it was only required to provide the "opportunity for complete control of the defense" to Digitas, which it did. [ECF No. 82 at 2].

With regards to the parties' indemnification obligations, the MSA provides that: "the foregoing indemnity is conditioned upon (i) prompt written notice by the indemnified party to the indemnifying party of any claim, action or demand for which indemnity is claimed; (ii) the

opportunity for complete control of the defense and settlement thereof by the indemnifying

party; and (iii) such reasonable cooperation, at the indemnifying party's expense, by the

indemnified party in the defense as the indemnifying party may request."  [ECF No. 69-1 at 10].

Digitas appears to argue only that Liberty Mutual failed to satisfy condition (ii), which requires

that Digitas be afforded an "opportunity for complete control of the defense and settlement

thereof."  In support of this assertion, Digitas claims that Liberty Mutual failed to allege in the

Complaint or Third-Party Complaint that a tender of defense was made and that Liberty Mutual's

claim for contractual indemnity should therefore be dismissed.  Digitas relies, at least in part, on

a redacted email between counsel wherein counsel for Liberty Mutual, Mr. Froio, wrote that

"Liberty has <u>never</u> tendered the defense of the pending litigation to Digitas pursuant to the

Master Services Agreement effective as of April 1, 2012 ("MSA")." [ECF No. 69-4] (emphasis

in email).

Liberty responds that the word "tender" is not found in Section 14 of the MSA and that it

was only required to provide Digitas the "opportunity for complete control of the defense"  [ECF

No. 82 at 3], which it did.  In support, Liberty attached another, also redacted version of the same

email cited by Digitas, which reads as follows:

1. Liberty has <u>never</u> tendered the defense of the pending litigation to
   Digitas pursuant to the [MSA].  During Liberty's good faith
   negotiations of a tolling agreement over the last few weeks, you
   advised me that if Digitas and Precise Leads were going to cover
   80% of the defense costs of the litigation, Digitas would likely
   avail itself of the opportunity to take full control of the defense of
   the litigation pursuant to paragraph 14a of the MSA.  You first
   advised me that Digitas elected to take over the defense of the
   litigation in your email to me on Sunday, January 23, 2016, but
   subject to the reservations in your email and that of Precise Leads'
   counsel.

2. Liberty has <u>never</u> refused to allow Digitas to accept and assume
   the defense of the litigation.

   3. Digitas has <u>never</u> given Liberty an unqualified acceptance of the defense of the pending litigation, including the terms in your January 29th email.

[ECF No. 82-1] (emphasis in email).  Liberty Mutual maintains that, as evidenced by the email, it has satisfied all conditions required for it to seek indemnification from Digitas.  [ECF No. 69 at 4].

   Both Digitas and Liberty Mutual rely on this email from Mr. Froio in support of their respective positions on the motion to dismiss.  "The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint."  <u>Young v. Lepone</u>, 305 F.3d 1, 10-11 (1st Cir. 2002).  Liberty Mutual's Third-Party Complaint does not explicitly reference Mr. Froio's email but it does allege that "Liberty placed Digitas and Precise Leads on notice and requested indemnification pursuant to the relevant contracts between the parties. Digitas and Precise Leads have each refused," [ECF No. 57-1 at 24, ¶ 27] and that "Liberty performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the LMIC-Digitas Agreement and SOW, including making all payments due and owing under the LMIC-Digitas Agreement . . ." [ECF No. 57-1 at 26, ¶ 39].  There are limited circumstances where a district court may consider the terms of a document not attached to the complaint when resolving a motion to dismiss.  <u>See, e.g.</u>, <u>Hodas v. Sherburne, Powers & Needham, P.C.</u>, 114 F.3d 1169 at *1, 1997 WL 211223 (1st Cir. 1997) (unpublished) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (quoting <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993)); <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001) ("There is, however, a narrow exception "for documents the authenticity of which

are not disputed by the parties; for official public records; for documents central to plaintiffs'

claim; or for documents sufficiently referred to in the complaint.") (citation omitted).  For

purposes of the motion to dismiss, the Court concludes that it may consider Mr. Froio's email

when reviewing the motion to dismiss given the language of the Third-Party Complaint and the

fact that both parties reference the email in the context of the motion to dismiss and do not

appear to contest its authenticity.  See e.g., Beddall v. State Street Bank and Trust Co., 137 F.3d

12, 17 (1st Cir. 1998) (holding that court did not err in considering document referred to in

complaint but not attached in ruling on motion to dismiss).

　　　Although Digitas argues that Liberty Mutual never "tendered" its defense, the MSA does

not actually require that the request for defense be "tendered."  Instead, the MSA requires only

that the party provide "(ii) the opportunity for complete control of the defense and settlement

thereof by the indemnifying party."  The MSA, by its terms, is governed by Massachusetts law.

[ECF No. 69-1 at 14].  Under Massachusetts law, "words that are plain and free from ambiguity

must be construed in their usual and ordinary sense," and the agreement should be read "in a

reasonable and practical way, consistent with its language, background, and purpose."  Bukuras

v. Mueller Grp., LLC, 592 F.3d 255, 262 (1st Cir. 2010) (quoting Cady v. Marcella, 729 N.E.2d

1125, 1129-30 (Mass. App. 2000)).  Here, Mr. Froio's email communication with counsel for

Digitas provides sufficient evidence of "the opportunity for complete control of the defense and

settlement thereof" to defeat a motion to dismiss.  See Trustees of the New York, New Haven &

Hartford RR Co. v. Tileston & Hollingsworth Co., 345 Mass. 727, 733 (1963) (stating that the

"num[]erous communications between the plaintiff, the defendant, and the defendant's insurance

carrier, culminating in the latter's denial of liability, make it clear that sufficient 'notice and

opportunity to defend' were provided.").  On the basis of this email exchange, and construing the

MSA according to its plain language, the Court cannot conclude as a matter of law that Digitas has not had an opportunity for control of the defense.

Digitas' citation to <u>Pasquale v. Shore</u>, 343 Mass. 239 (1961), to show that the Massachusetts Supreme Judicial Court uses the concept of "tender of defense" and "opportunity for complete control of the defense" interchangeably does not establish that Liberty Mutual has failed to satisfy the condition precedent.  In <u>Pasquale</u>, the Court held that "oral notice to Shore was sufficient to make the earlier judgment binding on Shore" because "[t]he express requirement of the contract to give 'opportunity to defend' imposed no greater duty in respect of notice and tender of defense"  Here, as in <u>Pasquale</u>, it is undisputed that Digitas received some form of written notice of its opportunity to take full control of the defense.  [ECF No. 61 at ¶ 39]. This is enough to defeat the motion to dismiss based on an alleged failure to satisfy a condition precedent.

**b.  Liberty Mutual's Indemnity Claim is not Premature**

Digitas next argues that Liberty Mutual's claims for indemnity under the MSA relative to Counts II and IV of the Third-Party Complaint are premature because no duty to indemnify can be asserted until liability is determined and payments are made to Johansen by Liberty.  [ECF No. 69 at 11].   Liberty Mutual responds that its claim for indemnity became ripe as soon as it first incurred fees related to the defense of Plaintiff's claims.  [ECF No. 82 at 2].  Liberty's Third-Party Complaint alleges it "has incurred and continues to incur defense costs arising from Plaintiff's claims, for which Digitas is responsible."  [ECF No. 61 at 26].  The MSA provides in pertinent part that the indemnifying party is required to "indemnify and hold harmless the other party . . . from and against any and all third party claims, damages, liabilities, costs and expenses, including reasonable legal fees and expenses" [ECF No. 69-1].

Digitas relies on two cases in support of its argument that, until liability is determined on the underlying claim (Johansen's claim against Liberty), no duty to indemnify can be asserted against Digitas.  See Narragansett Bay Ins. Co. v. Kaplan, 146 F.Supp.3d 364 (D. Mass. 2015); Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F.Supp.3d 15 (D. Mass. 2015). While both of these cases support the proposition that a declaratory judgment action regarding an insurer's duty to indemnify is premature if the underlying claim for liability has not been resolved, neither case applies to the facts of this case, which involves neither a declaratory judgment action nor a claim for insurance coverage.

Because the MSA requires the indemnifying party to pay attorney's fees and costs, and because Liberty Mutual has alleged that is has incurred such fees and costs, this case is distinguishable from the cases cited by Digitas in support of its motion to dismiss.  Rather, this case is more analogous to Fontes v. Harris Corp., 606 F.Supp. 655, 655 (D. Mass. 1985), where the district court denied as premature a motion to dismiss an implied indemnity claim pending further pretrial discovery.  Here, because Liberty has plead its claim for indemnification under the MSA and Digitas has not shown why that claim must fail, Digitas' motion to dismiss Counts II and IV for indemnity is denied as premature without prejudice to renew such arguments in the future.

**c.  The Economic Loss Doctrine Does Not Bar Liberty Mutual's Negligence Claim**

Finally, Digitas argues that Liberty Mutual's claim of negligence (Count VI) should be dismissed based on the Massachusetts economic loss doctrine.  [ECF No. 69 at 11].  The economic loss doctrine generally provides that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.  FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993); see also Strategic Energy, LLC v. W.

Massachusetts Elec. Co., 529 F.Supp.2d 226, 236 (D. Mass. 2008) (stating that economic loss doctrine provides "that a party that breaches a contract is ordinarily not liable in tort where only pure economic loss is alleged.").  Where, as here, there is contractual privity between the parties, "the economic loss rule is 'founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.'" Arthur D. Little Int'l, Inc. v. Dooyang Corp., 928 F.Supp. 1189, 1202 (D. Mass. 1996) (quoting S. Carolina Electric & Gas Co. v. Westinghouse Electric Corp., 826 F.Supp. 1549, 1557 (D.S.C.1993)).

While the economic loss doctrine general prevents the recovery of purely economic losses in tort actions, "Massachusetts courts have upheld tort claims to recover economic losses from [the] negligent breach of contractual duties."  Dooyang Corp., 928 F.Supp at 1203 (citing Abrams v. Factory Mutual Liability Ins. Co., 298 Mass. 141, 144 (1937)).  "In such cases, the scope of the duty owed from one contracting party to the other is defined by the terms of the contract."  Id.  As explained by Abrams, "[a]lthough the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort." 298 Mass. at 144, *abrogated on other grounds by* Hartford Cas. Ins. Co. v. N.H. Ins. Co., 417 Mass. 115, 121 (1994).  Even where there is a valid negligence claim between contracting parties, however, "it is measured by the terms of the contract."  Dooyang Corp., 928 F.Supp. at 1203 (holding that contractual damages limitation applied to negligence claim).  This means that if the contract limits damages for a breach of contract, this same limitation restricts what can be recovered based on a claim of negligence.

With regard to the negligence claim, the Third-Party Complaint alleges that Digitas owed duties to Liberty Mutual to perform the contract carefully, professionally, and within the standards of care expected of professionals in its field, including in communicating with consumers and that as a professional in the field of marketing and new customer acquisition, Digitas' failure to comply with the TCPA was reckless or grossly negligent and caused damages to Liberty Mutual. [ECF No. 61 at 30].

Digitas responds that Liberty Mutual's negligence claim is based on the same conduct and contractual duties that were already imposed by the MSA and that the claim seeks the same relief as the breach of contract claim. [ECF No. 69 at 11]. Digitas further asserts that Liberty Mutual's negligence claim fails because it does not define any distinct duty of care beyond that set forth in the MSA which provides that it will perform services "in a competent at professional manner" and "use commercially reasonable efforts" to avoid giving anyone grounds to claim "invasion of the right to privacy." Id. at 12. Thus, Digitas argues that Liberty Mutual's negligence claim is precluded by the economic loss doctrine because "[t]he parties have allocated the economic risk of Digitas' negligence by means of the contract itself." [ECF No. 105 at 5.].

The Court finds that Liberty Mutual's claim for negligence is not barred by the economic loss doctrine. First, Liberty Mutual's claim fits squarely into the exception to the economic loss doctrine that allows claims for negligent performance of contractual duties to survive where a party has successfully pled a breach of contract claim. See Brown v. Quest Diagnostics, LLC, No. 08-11517-RGS, 2008 WL 5236033 at *4 (D. Mass. Dec. 16, 2008). Here, Liberty Mutual has sufficiently alleged that Digitas negligently performed its obligations under the MSA to survive a motion to dismiss. However, Liberty Mutual's negligence claim may be limited by

contractual damages limitations that apply through the MSA.  See Dooyang, 928 F.Supp. at 1203

(holding that where negligence claim "essentially restates the factual allegations of the breach of

contract claim" that "the negligence claim is limited by the contractual damages limitation . . .").

The Court also concludes that compliance with the TCPA was an independent duty

imposed by law, not solely under the contract, and that Digitas' alleged failure to comply with

the statute's terms is sufficient to support a claim for negligent performance under the MSA.

> Tort obligations are in general obligations that are imposed by law
> on policy considerations to avoid some kind of loss to others.  They
> are obligations imposed apart from and independent of promises
> made and therefore apart from any manifested intention of parties to
> a contract or other bargaining transaction.  Therefore, if the alleged
> obligation to do or not to do something that was breached could not
> have existed but for a manifested intent, then contract law should be
> the only theory upon which liability would be imposed.

Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368 (1997) (quoting W.

Prosser & W. Keaton, Torts § 92, at 656 (5th ed. 1984)).  Here, compliance with the TCPA was

required by statute, a duty that clearly arose from a source other than "the actions and intentions

of the parties."  Treadwell v. John Hancock Mut. Life Ins. Co., 666 F.Supp. 278, 289 (D. Mass.

1987) (holding that "absent an independent duty imposed by law, plaintiff has not stated an

action in tort by alleging injury caused by Hancock's negligent performance of its promises").

Because the TCPA is an independent duty imposed by law, the allegations in the complaint that

Digitas negligently performed its contractually assumed duties by not complying with the TCPA,

are sufficient to survive a motion to dismiss.  See Strategic Energy, LLC, 529 F.Supp.2d at 236

(holding that economic loss doctrine did not apply where certain terms of the parties' agreement

were prescribed by statute).

**VI.    Conclusion**

The Court concludes that Johansen's claims against Liberty Mutual are not mooted by the settlement offer and that the Court retains subject matter jurisdiction over those claims.  The Court also finds that Digitas appears to have had the requisite opportunity to take full control of the defense, the indemnity claim is not premature, and the economic loss doctrine does not preclude Liberty Mutual's negligence claim. Digitas' Motion to Dismiss [ECF No. 68] is therefore <u>DENIED</u>.

**SO ORDERED.**

Dated: December 8, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE
