KEN JOHANSEN, individually and on behalf
of all others similarly situated,

              Plaintiff,

    v.

LIBERTY MUTUAL GROUP, INC.; and
SPANISH QUOTES, INC. d/b/a
WESPEAKINSURANCE,

              Defendants,

LIBERTY MUTUAL GROUP, INC.,

              Crossclaimant,

    v.

SPANISH QUOTES, INC. d/b/a
WESPEAKINSURANCE,

              Crossdefendant,

LIBERTY MUTUAL GROUP, INC.,
LIBERTY MUTUAL INSURANCE
COMPANY,

              Third-party Plaintiffs,
    v.

PRECISE LEADS, INC., and DIGITAS,INC.,

              Third-party Defendants.

NO. 1:15-cv-12920-ADB

**DEMAND FOR JURY**

**PLAINTIFF'S RESPONSE TO JOINT MOTION BY LIBERTY MUTUAL,
DIGITAS AND PRECISE LEADS TO DISQUALIFY PLAINTIFF AS CLASS
REPRESENTATIVE**

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 2

      A.    Mr. Johansen is dedicated to eradicating unlawful telemarketing ........................ 2

      B.    Mr. Johansen received calls promoting Liberty Mutual's auto insurance
            without his consent ................................................................................. 3

      C.    Mr. Johansen filed a lawsuit against Liberty Mutual and its agents
            alleging they violated the TCPA ............................................................. 3

III.  AUTHORITY AND ARGUMENT ..................................................................... 6

      A.    Defendants' motion should be denied because it is premature ........................... 6

      B.    Plaintiff's claims are typical of the Classes ............................................... 7

      C.    Plaintiff's prior experience as a named plaintiff in TCPA class actions
            does not render him an inadequate class representative ................................... 12

IV.   CONCLUSION .................................................................................................. 17

## FEDERAL CASES

*Andrews v. Bechtel Power Corp.,*
   780 F.2d 124 (1st Cir. 1985) ........................................................................... 12

*Armes v. Shanta Enter., Inc.*,
   No. 07 C 5766, 2009 WL 2020781 (N.D. Ill. July 8, 2009) ........................................... 13

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
   747 F.3d 489 (7th Cir. 2014) ........................................................................... 14

*Balschmiter v. TD Auto Fin. LLC*,
   303 F.R.D. 508 (E.D. Wis. 2014) ...................................................................... 10

*Bessette v. Avco Fin. Servs., Inc.*,
   279 B.R. 442 (D.R.I. 2002) .............................................................................. 6

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ........................................................................... 13

*Cholly v. Uptain Grp., Inc.*,
   Case No. 15 C 5030, 2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ..................................... 11

*Connor B. ex rel. Vigurs v. Patrick*,
   272 F.R.D. 288 (D. Mass. 2011) ........................................................................ 7

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
   --- F. Supp. 3d ----, 2017 WL 1489052 (M.D. Tenn. Apr. 26, 2017) ................ 12, 14, 15

*Doninger v. Pac. Nw. Bell, Inc.*,
   564 F.2d 1304 (9th Cir. 1977) ........................................................................... 8

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...................................................................................... 11

*Gragg v. Orange Cab Co., Inc.*,
   No. C12-0576RSL, 2014 WL 794266 (W.D. Wash. Feb. 27, 2014) ............................... 10

*In re Bank of Boston Corp. Sec. Litig.*,
   762 F. Supp. 1525 (D. Mass. 1991) .................................................................... 10

*Kavu, Inc. v. Omnipak Corp.*,
   246 F.R.D. 642 (W.D. Wash. 2007) ........................................................ 10

*Mey v. Venture Data, LLC*,
   --- F. Supp. 3d ----, 2017 WL 1193072 (N.D.W.V. Mar. 29, 2017).............. 15

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012)............................................................................... 2

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ................................................................ 13

*Ramirez v. NutraSweet Co.*,
   No. 95 C 130, 1996 WL 529413 (N.D. Ill. Sept. 11, 1996)............................ 9

*Saulsberry v. Meridian Fin. Servs., Inc.*,
   Case No. CV 14-6256 JGB (JPRx), 2016 WL 3456939 (C.D. Cal.
   Apr. 14, 2016) ..................................................................................... 11

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
   No. 11–10271–RWZ, 2012 WL 6589258 (D. Mass. Dec. 18, 2012) ............... 7

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*,
   401 F.3d 876 (8th Cir. 2005) ................................................................ 13

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972) ............................................................ 7, 8

## FEDERAL STATUTES

47 U.S.C. § 227(c)(1)............................................................................ 3, 4

47 U.S.C. § 227(c)(5)............................................................................... 4

## FEDERALRULES

47 C.F.R. § 64.1200(c)(2)......................................................................... 3

47 C.F.R. § 64.1200(f)(8)(i).................................................................... 8, 9

Fed. R. Civ. P. 23(a)(3)............................................................................ 7

Fed. R. Civ. P. 23(a)(4).......................................................................... 12

# OTHER AUTHORITIES

William B. Rubenstein, *Newberg on Class Actions* § 7.22 (5th ed. 2016 update) ...................... 6

# I. INTRODUCTION

In the guise of a "motion to disqualify," Defendants have filed what amounts to a premature motion to deny class certification before class discovery has been completed and, indeed, before Third-Party Defendants Precise Leads and Digitas have responded to Plaintiffs' written discovery requests or been deposed. Courts disfavor such "preemptive strikes" against class certification, granting them only if the defendant can show there is no set of facts entitling the plaintiff to relief. Defendants cannot meet this burden here.

Defendants contend that Mr. Johansen's claims are not "typical" of the class members because his claims are subject to a unique consent defense. But Defendants argued during a hearing last year that they believe every call recipient consented to the calls at issue in this case, not just Mr. Johansen. Indeed, the crux of Mr. Johansen's claim and the central issue that will be decided on summary judgment or at trial is whether, as a matter of law, the online forms that Defendants used to purportedly obtain "consent" from Mr. Johansen and other class members comply with the TCPA's prior, express consent requirements. This issue is common to every class member and is far from a "unique" defense to Mr. Johansen's claim. In fact, this common question supports certifying this case as a class action and then resolving this question at trial.

Defendants' adequacy arguments fail as well. Mr. Johansen is dedicated to eradicating unlawful telemarketing. Mr. Johansen diligently investigates the source of unlawful calls, reasonably preserves evidence so that he can prove his claims in litigation, and exercises his right to pursue a private cause of action against the perpetrators. Far from disqualifying him, Mr. Johansen's efforts on behalf of the proposed Classes make him more than adequate to represent the Classes' interests and vindicate their rights under the TCPA.

## II.  STATEMENT OF FACTS

**A.    Mr. Johansen is dedicated to eradicating unlawful telemarketing.**

Mr. Johansen, like many Americans, is frustrated by the many telemarketing calls that he regularly receives, calls that interrupt his daily life and invade his privacy. *See* Johansen Dep. Transcript, Dkt. No. 137-13, 50:3-16 ("[W]e had … eight calls within six hours from the same caller ID … and – it's totally annoying. I'm sorry. That's why we're here. Personally, I would rather live my life than answer telemarketing calls."); *id.* at 43:24 (stating that telemarketing calls are "intrusive"); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372-373 (2012) ("Many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes.") (citation omitted). Mr. Johansen receives over 400 such calls each year. *See* Dkt. No. 137-13, 46:18-21. Instead of allowing telemarketers to continue willfully violating the TCPA and intruding into his and Class members' lives, however, Mr. Johansen is dedicated to "trying to do something about it." *See id.* at 50:15-16.

In order to obtain the evidence required to hold telemarketers accountable for their illegal acts, Mr. Johansen records incoming calls and maintains a call log detailing his calls. *See id.* at p. 18-20, 40-48. He also answers calls rather than letting them go to voicemail, preferring to pick up the phone and speak with telemarketers because "[t]hey won't stop calling unless I do." *Id.* at 50:2. Once he receives a call that he suspects is unlawful, Mr. Johansen gathers information regarding who placed the call. *See id.* at p. 69-70. Without such diligent investigation, companies who continually violate the TCPA would never be held accountable for their illegal, intrusive conduct. Because his TCPA rights have been violated by multiple entities, Mr. Johansen has prosecuted lawsuits on his own behalf and on behalf of proposed classes. *See* Dkt. No. 137, p. 7.

**B.** **Mr. Johansen received calls promoting Liberty Mutual's auto insurance without his consent.**

Even though Mr. Johansen's residential telephone number has been listed on the National Do-Not-Call Registry since 2003, a Spanish Quotes representative called Mr. Johansen on his residential line on December 23, 2014. Dkt. No. 1 ¶¶ 34, 35, 80. The representative told Mr. Johansen that the purpose of the call was to provide Plaintiff with an insurance quote. *Id.* ¶ 37. After asking Mr. Johansen some basic questions, the representative transferred the call to a person named Brendan who identified himself as a licensed insurance agent in Ohio who handled overflow from Liberty Mutual. *Id.* ¶ 38-42.

Mr. Johansen contacted Liberty Mutual to inform it that he had received a telephone solicitation call the day before and to request that Liberty Mutual not call him again. *Id.* ¶¶ 44-46. The Liberty Mutual representative told Mr. Johansen that he was adding his name, address, and residential telephone number to Liberty Mutual's Internal Do-Not-Call list. *Id.* ¶¶ 47-48. Liberty Mutual confirmed that Mr. Johansen would not receive any calls placed either by Liberty Mutual or on Liberty Mutual's behalf by a vendor. *Id.* Notwithstanding the fact that his number was listed on the Registry and on Liberty Mutual's Internal DNC list, Mr. Johansen continued to receive numerous calls soliciting his purchase of insurance from Liberty Mutual. *Id.* ¶¶ 55-78.

**C.** **Mr. Johansen filed a lawsuit against Liberty Mutual and its agents alleging they violated the TCPA.**

As a result of the calls, Mr. Johansen brought this potential class action against Defendant Liberty Mutual and Spanish Quotes for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Under the TCPA, consumers who do not wish to receive telemarketing calls may register their telephone numbers on the National Do-Not-Call Registry ("Registry") so that telemarketing firms know they should not be contacted. *See* 47 U.S.C.

§ 227(c)(1); 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.* The TCPA makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Mr. Johansen registered his residential telephone number on the Registry in 2003. Dkt. No. 1 ¶ 34.

Mr. Johansen seeks to represent two proposed Classes, defined as follows:

> National Do-Not-Call Class: All persons in the United States to whom: (a) Defendants and/or any person or entity acting on Defendants' behalf initiated more than one telephone solicitation call; (b) promoting Defendants' goods or services; (c) in a 12-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

> Internal Do-Not-Call Class: All persons in the United States to whom: (a) Defendants and/or any person or entity acting on Defendants' behalf initiated more than one telephone solicitation call; (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

*Id.* ¶ 89.

After discovery commenced, Liberty Mutual amended its answer to add cross claims against Spanish Quotes and third-party allegations against Precise Leads and Digitas for contractual indemnification, breach of contract, and negligence. Dkt. No. 61. Liberty Mutual also produced documents that, according to Liberty, traced the calls to a request for an online quote for auto insurance by Mr. Johansen's wife, Rita. *See* Dkt. No. 137, at 4. At her deposition, however, Ms. Johansen denied requesting a quote for auto insurance online and denied filling out

an online form. *See* Declaration of Jennifer Rust Murray ("Murray Decl."), Ex. 1, at 12:24–

18:24. The purported "evidence" of consent that Liberty Mutual produced contained numerous

inaccuracies, including an old address, the wrong model of Ms. Johansen's vehicle, the wrong

insurance company, and the wrong birthdate. *See id.* & Dkt. No. 137-2.

The webpage that Liberty Mutual asserts gave its agents "consent" to call Mr. Johansen

requires the consumer to fill in information, including city, state, zip code, current residence,

credit rating, phone number, and email address. Dtk. No. 137-3. The webpage does not list

Liberty Mutual. The webpage contains the following language:

> By submitting my information, I understand that I may be matched
> with one or more insurance companies. I agree to receive calls
> about insurance products (which may be auto-dialed, use artificial
> or pre-recorded voices, and/or be text messages) from these
> companies and their agents to the number I've provided. I
> understand that my consent to receive calls is not required in order
> to purchase any goods or services. By submitting my information, I
> confirm that I understand and agree to these Terms of Service.

The webpage further states, "Your information will only be used by trusted partners to contact

you with your quotes." Dkt. No. 137-3. The webpage does not disclose who those "trusted

partners" are.

After Liberty Mutual filed its third-party complaint, Digitas paid $11,200 into an escrow

account purportedly to satisfy Mr. Johansen's individual claims. Digitas then filed a motion to

dismiss Mr. Johansen's claims as moot. Rather than accept the payment, Mr. Johansen argued in

response that Digitas's payment did not moot his claim because, among other things, it did not

provide relief to the proposed Classes. This Court stayed discovery while that motion was

pending and ultimately denied Digitas's motion. At the time the case was stayed, Plaintiff had

not received written discovery responses from Precise Leads or Digitas. Plaintiff still needs to

complete Liberty Mutual's deposition and depose representatives from Precise Leads and Digitas.

The Court only very recently lifted the stay and entered a case management schedule that sets a fact discovery deadline of August 4, 2017. Dkt. No. 140.

### III.  AUTHORITY AND ARGUMENT

**A.**     **Defendants' motion should be denied because it is premature.**

Anticipatory motions to deny class certification are "the functional equivalent of a motion to dismiss." *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 450 (D.R.I. 2002) (quoting *Walls v. Wells Fargo Bank, N.A.*, 262 B.R. 519, 529 (E.D. Cal. 2001)). This is because "[i]t is not appropriate to require [a] plaintiff to establish that she can maintain a class action under Rule 23 before plaintiff even attempts to do so." *Id.* Courts typically deny such motions "unless it is clear from the face of the complaint that a class action cannot be maintained." William B. Rubenstein, *Newberg on Class Actions* § 7.22 (5th ed. 2016 update).

Defendants have produced some documents and Plaintiff commenced the deposition of Liberty Mutual. However, that deposition was suspended due to Plaintiff's counsel's illness. This Court stayed the action before Plaintiff could complete the deposition of Liberty Mutual. The stay also impacted third-party discovery. After the case was stayed, both Precise Leads and Digitas refused to respond to discovery or produce Rule 30(b)(6) witnesses.

Defendants now ask the Court to resolve class certification issues based on an incomplete and one-sided record. For example, Defendants assert that Ms. Johansen filled out the online form, attached as Exhibit 2 to their motion. *See* Dkt. No. 137-3. Ms. Johansen has denied doing so. Murray Decl., Ex. 1, at 12:24–18:24. Plaintiff has not had an opportunity to depose Liberty Mutual, Spanish Quotes, Precise Leads, or Digitas about this document, how it was created, or the scope of its use with other class members. Plaintiffs are entitled to this information before

issues of "typicality" and "adequacy" can be decided. *See Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972) (reversing district court's decision to strike class allegations because there was insufficient discovery to understand the scope and contours of the proposed class). Liberty Mutual's motion should be denied for that reason alone.

**B.    Plaintiff's claims are typical of the Classes.**

Rule 23 requires that Plaintiff's claims be typical of those of other Class members. Fed. R. Civ. P. 23(a)(3). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interests and suffer the same injury as the unnamed class members." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 296 (D. Mass. 2011) (quotation and internal marks omitted); *see also Sparkle Hill, Inc. v. Interstate Mat Corp.*, No. 11–10271–RWZ, 2012 WL 6589258, at *2 (D. Mass. Dec. 18, 2012) (finding typicality met in TCPA case where "plaintiffs allege that they were sent the same fax as the other class members and suffered the same injury").

Here, Mr. Johansen alleges that he received multiple autodialed calls placed by or on behalf of Defendants within a 12-month period, despite his number being listed on the National Do-Not-Call Registry. *See* Complaint, Dkt. No. 1, ¶¶ 34-82. He further alleges that he continued to receive calls after asking to be placed on Liberty Mutual's Internal DNC list. *See id.* He seeks to represent two Classes of individuals who, like him, received more than one call in a 12-month period even though their numbers were listed on the NDNCR, or who received a call more than 30 days after requesting not to be called. *Id.* ¶ 89. Plaintiff and Class members suffered the same invasion of privacy, annoyance, and nuisance harms. *Id.* ¶ 88. His claims are indisputably typical.

Defendants wrongly maintain that Mr. Johansen's typicality is not satisfied because Mr. Johansen purportedly consented to calls by visiting a website and filling out an online form. Mr.

Johansen and his wife deny filling out the form, but even if they did, typicality is still satisfied because Defendants have represented to the Court that their position is that <u>every</u> proposed class member consented to receive calls. *See* Dkt. No. 116 (Reif, June 13, 2016 Hearing Transcript, 30:22-25) ("Your Honor, we're going to say it's not a good class because by the nature of the records that we have, the records that they're pulling their class from, <u>we believe everyone consented</u>.") (emphasis added). Put a different way, whether Mr. Johansen consented to the calls is not a "unique" defense but instead is common to him and the class.[1]

Indeed, common issues that will predominate during the merits phase of this litigation include (1) whether consumers actually filled out consent forms online, and (2) whether the online website form through which Defendants allegedly obtained permission to call is sufficient for prior express consent under the TCPA. On summary judgment, Plaintiff expects to establish that consumers never consented to receive insurance telemarketing calls as alleged, and even if some did, they did not consent to receive telemarketing calls from or on behalf of Liberty Mutual. In the context of telemarketing calls such as those at issue here, prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such

---

[1] Defendants fail to present any evidence that some class members filled out the online form and some did not. Any uncertainty regarding whether the defense is unique to Mr. Johansen militates in favor of delaying a ruling on Defendants' challenge to Mr. Johansen's typicality, at least until Plaintiff obtains full discovery on the issue of consent. *See Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."); *Yaffe*, 454 F.2d at 1367 (reversing district court's denial of class certification without sufficient discovery).

advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i). A written agreement "shall include" a "clear and conspicuous disclosure" informing the person signing that the signatory (1) "authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice" and (2) "is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 CFR § 64.1200(f)(8)(i)(A–B).

As detailed above, Ms. Johansen denies ever filling out an online for requesting insurance quotes, calling into question the veracity of Defendants' claim of consent. Further, the website form and disclosure on which Defendants rely fails to satisfy the prior express written consent requirements. For example, the disclosure fails to clearly and conspicuously identify Liberty Mutual as a "seller" who would be telemarketing to the consumer filling out the form. *See* Dkt. 137-3. The name Liberty Mutual is nowhere to be found on the disclosure page of the website. *Id.* The website also fails to clearly and conspicuously inform the consumer that, by signing, the consumer authorizes telemarketing, as opposed to informational, calls. On summary judgment or at trial, Plaintiff will argue that the Defendants' consent claims are a farce and that, in any event, they do not rise to the level required for prior express written consent for telemarketing calls. Defendants may disagree, but the answer to these questions will be the same for both Mr. Johansen and for the Classes.

Even if Mr. Johansen was subject to a "unique" defense (he is not), that alone is not sufficient to defeat typicality. *See Ramirez v. NutraSweet Co.*, No. 95 C 130, 1996 WL 529413, at *3 (N.D. Ill. Sept. 11, 1996) ("It is well-settled and clear that unique defenses do not necessarily preclude the court's finding of typicality; 'it is only when a unique defense will

consume the merits of a case that a class should not be certified.'") (quoting *Riordan v. Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986)); *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991) ("[W]here a named plaintiff may be subject to unique defenses that would divert attention from the common claims of the class, that plaintiff cannot be considered typical of the class.") (emphasis added). Defendants have not shown that the consent defense, even if it was unique, would "consume the merits of the case."

Courts have found that a purported consent defense to a named plaintiff's TCPA claim is not unique but, rather, is a defense likely to be raised against many class members and therefore that it does not create typicality concerns. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) ("Although the presence of unique defenses can undermine the typicality element, [defendant's] defenses to plaintiff's claims are not unique. Instead, it will no doubt assert the same defense for most if not all of the class members' claims: that recipients consented to receive advertisements via facsimile by providing their contact information to Manufacturers' News. Therefore, the assertion of that defense does not render plaintiff's claims atypical."); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 526 (E.D. Wis. 2014) ("[T]he Court finds that it is eminently likely that the defenses the defendant references [including consent] will be typical of the class. 'Typical of the class' does not mean 'identical across the class,' as the defendant appears to suggest."), *disagreed with on other grounds by Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015); *Gragg v. Orange Cab Co., Inc.*, No. C12-0576RSL, 2014 WL 794266, at *3 (W.D. Wash. Feb. 27, 2014) (finding that issue of whether provision of phone number constituted consent "will undoubtedly be asserted as a defense as to many, if not all, of the class members" and concluding as a result that "Plaintiff's claims are not atypical").

The two cases Defendants cite applying the "unique defense" principle to TCPA claims are inapposite because they arise in the context of <u>revocation</u> of consent, where the court had already determined that the named plaintiff had originally provided legally sufficient consent. *See Saulsberry v. Meridian Fin. Servs., Inc.*, Case No. CV 14-6256 JGB (JPRx), 2016 WL 3456939, at *12 (C.D. Cal. Apr. 14, 2016); *Cholly v. Uptain Grp., Inc.*, Case No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017). As the *Saulsberry* court explains, "[t]he revocation of consent presents greater evidentiary difficulties than the initial presence or absence of consent, as the interpretation of an act as revocation, the timing of such revocation, and similar questions are more likely to require resolution on an individualized basis." 2016 WL 3456939, at *11. The court determined that Mr. Saulsberry was not typical of the class because "he initially provided prior consent" and, "in fact, <u>he no longer f[ell] within the TCPA Class definition</u>." *Id.* at *12. It is axiomatic that a proposed class representative who does not fall within the class definition is not typical of the class he seeks to represent. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class."). Similarly, in *Cholly*, the court determined:

> Plaintiff's complaint asserts claims based only on telephone calls made to her cellular phone after she had expressly revoked her consent. Because she had apparently originally given consent, she cannot represent a class of persons who received calls from [defendant] where [defendant] did not have express consent. Her claims would not be typical to those persons.

2017 WL 449176, at *3. Further, while both courts denied certification of a subclass of individuals who revoked consent based on commonality and predominance concerns, both courts implied a likelihood that the plaintiff's claims <u>would</u> be typical of a revocation subclass. *See Saulsberry*, 2016 WL 3456939, at *12; *Cholly*, 2017 WL 449176, at *3-4.

Defendants also make much of Mr. Johansen's conduct during the phone calls, in which he purportedly "confirmed" his interest in an auto insurance quote, agreed to continue the calls, and agreed to be transferred to another agent. Dkt. No. 137, at 5-6, 11. Defendants suggest that because Mr. Johansen agreed to <u>continue</u> the calls long enough to find out who was calling and what they were selling, he somehow agreed to <u>receive</u> the calls in the first place. Defendants are mistaken. Agreeing to speak with a representative after they have already placed an unlawful call does not suddenly morph the illegal call into a legal one. *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, --- F. Supp. 3d ----, 2017 WL 1489052, at *5 (M.D. Tenn. Apr. 26, 2017) ("There is nothing inconsistent, though, about wanting a home security system and not wanting to be robo-called about it. The point of the TCPA is not to protect consumers from offers themselves, but the abusive mechanisms by which those offers are conveyed."). The investigative actions Mr. Johansen took to confirm who was calling and what was being sold has nothing to do with whether Defendants had consent to call Mr. Johansen's NDNC registered telephone number in the first place.

C.    **Plaintiff's prior experience as a named plaintiff in TCPA class actions does not render him an inadequate class representative.**[2]

Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement mandates that: (i) the class representative possesses no interests antagonistic to the class, and (ii) class counsel is qualified and competent. *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985).

---

[2] Defendants also argue that the "unique defenses" issue renders Mr. Johansen inadequate to represent the class. For the same reasons already discussed in the context of typicality, Mr. Johansen is not rendered an inadequate representative as the result of any "unique defense."

Defendants argue that Mr. Johansen is an inadequate class representative because he carefully records all calls he receives and has successfully prosecuted multiple unlawful calls under the TCPA, calling these "peculiar" activities. Defendants suggest that, somehow, Mr. Johansen's actions in gathering and preserving evidence that his rights have been violated and then suing the defendants responsible for such violations is "suspect" behavior. Defendants are wrong.

Courts appropriately reject attacks on so-called "professional plaintiffs" in recognition of the important role private citizens play in enforcing consumer statutes, and indeed recognize that experience in enforcing a statute supports class certification. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Easterbrook, J.) (reversing denial of class certification based on "professional plaintiff" argument, and noting that "the district judge did not explain . . . why 'professional' is a dirty word. It implies experience, if not expertise"); *see also Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that fixed award liquidated damages under the TCPA demonstrate the intent to incentivize aggrieved parties to act as "private attorneys general"); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) ("[I]t's not unlawful to be a professional class action plaintiff.... Indeed, an experienced plaintiff in such an action may be able to ensure that class counsel act as faithful agents of the class."). As a result, Mr. Johansen's experience in prosecuting TCPA actions does not render him inadequate; in fact, his experience supports his adequacy to serve as a class representative in this matter. *See Armes v. Shanta Enter., Inc.*, No. 07 C 5766, 2009 WL 2020781, at *4 (N.D. Ill. July 8, 2009) ("[T]he fact that plaintiff is involved in multiple lawsuits is not enough to make him inadequate to serve the class.").

Similarly, the fact that Mr. Johansen may be motivated, in part, by the monetary recovery available under the TCPA does not render him inadequate. If there were no monetary incentive for bringing TCPA claims, many plaintiffs likely would not bring them. Indeed, the statutory damages available under the TCPA are specifically underlined designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014); *see also Cunningham*, 2017 WL 1489052, at *4 ("The TCPA does not merely contemplate self-interested plaintiffs—it encourages them…. The Court cannot read the TCPA and imagine that Congress intended to exclude plaintiffs such as Cunningham. If anything, it intended to recruit them, incentivizing them by offering them such sizable rewards."). Moreover, it is ironic that Defendants now argue that Mr. Johansen is an inadequate representative because he is pursuing this case for his "individual benefit," where Mr. Johansen rejected an individual offer of settlement for $11,200 in order to further pursue claims on behalf of the Classes. The fact that Mr. Johansen rejected the Defendants' bid to "pick him off" without providing any relief whatsoever to the Classes ultimately supports Mr. Johansen's adequacy to serve as the class representative in this case. Contrary to Defendants' contentions, Mr. Johansen has already proven to this Court that he will put the interests of the Classes ahead of his own, a commitment required for any consumer appointed to serve the class as class representative.

Equally unavailing is Defendants' argument that Mr. Johansen's careful documentation of the illegal calls he receives and his decision to answer such calls for purposes of investigating who is responsible for placing them renders him an inadequate representative. To the contrary,

Mr. Johansen's answering, recording, and logging the calls he receives <u>protects</u> the interests of Class members. As one court explains:

> It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur…. While [defendant] is understandably frustrated by [plaintiff's] efficacy, she is doing exactly what Congress intended —enforcing the law.

*Mey v. Venture Data, LLC*, --- F. Supp. 3d ----, 2017 WL 1193072, at *9-10 (N.D.W.V. Mar. 29, 2017); *see also Cunningham*, 2017 WL 1489052, at *4. Indeed, if Mr. Johansen had not so carefully investigated and documented the calls, Defendants would likely now be before the Court pointing out the paucity of any evidence connecting them to the calls and seeking dismissal of all claims.

Finally, the suggestion that Mr. Johansen's claim of invasion of privacy is not made in good faith because he plans to sue TCPA violators who call him is wrong. As noted above, Mr. Johansen began to fight back against illegal telemarketers only after experiencing frustration with his regular receipt of illegal telemarketing calls that interrupted his daily life and invaded his privacy. *See* Dkt. No. 137-13, 50:3-16 ("[W]e had … eight calls within six hours from the same caller ID … and – it's totally annoying. I'm sorry. That's why we're here. Personally, I would rather live my life than answer telemarketing calls."); *id.* at 43:24 (stating that telemarketing calls are "intrusive"). Moreover, this premise, if accepted, would undermine most TCPA claims. As one court explains in detail:

> It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would

require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes. The TCPA entitles a plaintiff to statutory damages in the generous amount of $500 per violation—a figure that can be tripled for a willful and knowing violation. The Court ventures to guess that many ordinary people—not merely "professional plaintiffs"—would accept the fleeting invasion of their privacy associated with an unsolicited robo-call for the reward of $1500—or even $3000, if more than one TCPA provision was violated. If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs—or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them. The Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA.

The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights. The Court sees no authority for the proposition that his privacy interests ceased to exist merely because he realized that he could profit from suing for their invasion.

*Id.* at *5.

Mr. Johansen's careful investigation of TCPA violators who call his telephone number and his prior experience suing such violators do not render him an inadequate representative of the proposed Classes. To the contrary, Mr. Johansen is doing exactly what Congress intended—enforcing the law.[3]

---

[3] Defendants cite just a single out-of-circuit case to support their argument that Mr. Johansen is an inadequate representative, stating that "[c]ourts look with suspicion on representative plaintiffs in TCPA class actions who appear to be in the business of generating TCPA claims." Dkt. No. 137, at 12 (citing *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 381-83 (C.D. Cal. 2016)). Not only do the facts in *Nghiem* present a much more troubling picture of a plaintiff truly attempting to cultivate a TCPA claim than in the instant case, the conclusions the *Nghiem* court reached also run contrary to the many well-reasoned decisions cited herein.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants'

motion to disqualify Mr. Johansen as a representative of the Classes. In the alternative, should

the Court determine that more evidence is needed regarding whether Mr. Johansen will be

subject to a "unique defense," Plaintiff requests the Court delay any ruling on Mr. Johansen's

typicality until Plaintiff obtains outstanding discovery on the issue of consent.

Dated:  May 22, 2017.

Respectfully submitted,

TERRELL MARSHALL LAW GROUP PLLC


By:    /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
       Beth E. Terrell, *Admitted Pro Hac Vice*
       Email:  bterrell@terrellmarshall.com
       Jennifer Rust Murray, *Admitted Pro Hac Vice*
       Email:  jmurray@terrellmarshall.com
       Mary B. Reiten, *Admitted Pro Hac Vice*
       Email:  mreiten@terrellmarshall.com
       936 North 34th Street, Suite 300
       Seattle, Washington  98103-8869
       Telephone:  (206) 816-6603
       Facsimile:  (206) 319-5450

       Edward A. Broderick
       Email:  ted@broderick-law.com
       Anthony Paronich
       Email:  anthony@broderick-law.com
       BRODERICK & PARONICH, P.C.
       99 High Street, Suite 304
       Boston, Massachusetts 02110
       Telephone: (508) 221-1510

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone:  (508) 655-1415
Facsimile:  (508) 319-3077

*Attorneys for Plaintiff and the Proposed Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Jennifer Rust Murray, hereby certify that on May 22, 2017, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Anthony A. Froio, BBO #554708
> Email: afroio@robinskaplan.com
> Manleen Singh, BBO #686686
> Email: msingh@robinskaplan.com
> ROBINS KAPLAN LLP
> 800 Boylston Street – 25th Floor
> Boston, Massachusetts 02199
> Telephone: (617) 267-2300
> Facsimile: (617) 267-8288
>
> Michael D. Reif, *Admitted Pro Hac Vice*
> Email: mreif@robinskaplan.com
> ROBINS KAPLAN LLP
> 800 LaSalle Avenue, Suite 2800
> Minneapolis, Minnesota 55402
> Telephone: (612) 349-8500
> Facsimile: (612) 339-4181
>
> *Attorneys for Defendant Liberty Mutual Group, Inc.*
>
> Michael S. Batson
> Email: mbatson@hermesnetburn.com
> Matthew E. Bown
> Email: mbown@hermesnetburn.com
> HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
> 265 Franklin Street, Seventh Floor
> Boston, Massachusetts 02110-3113
> Telephone: (617) 728-0050
> Facsimile: (617) 728-0052
>
> *Attorneys for Third-Party Defendant Precise Leads, Inc.*

Terry Klein
Email:  tklein@henshon.com
Laura Greenberg-Chao
Email:  lgreenbergchao@henshon.com
HENSHON KLEIN LLP
120 Water Street, Second Floor
Boston, Massachusetts 02109
Telephone:  (617) 367-1800
Facsimile: (617) 507-6454

Michael Dockterman, *Admitted Pro Hac Vice*
Email:  mdockterman@steptoe.com
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, Illinois 60603
Telephone: (312) 577-1243
Facsimile:  (312) 577-1370

*Attorneys for Third-Party Defendant Digitas, Inc.*

DATED this 22nd day of May, 2017.


/s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
Jennifer Rust Murray, *Admitted Pro Hac Vice*