UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEN JOHANSEN, *individually and on behalf of all others similarly situated*, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 15-cv-12920-ADB |
| LIBERTY MUTUAL GROUP, INC., et al., | * * * | |
| Defendants. | * * * | |

**<u>MEMORANDUM AND ORDER ON MOTION TO COMPEL</u>**

BURROUGHS, D.J.

In this putative class action, Plaintiff seeks to represent a class of individuals claiming violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), as against Liberty Mutual Group, Inc.[1] and Spanish Quotes, Inc. d/b/a WeSpeakInsurance. Plaintiff claims that Defendants called or caused him to be called multiple times in violation of the TCPA, although his phone number was properly listed on the National Do-Not-Call Registry and even after he had specifically told Liberty Mutual that he should not be called again. Liberty Mutual denies any liability as to Plaintiff but asserts in its answer and third-party complaint that, if it is held liable to Plaintiff, Liberty Mutual is entitled to indemnification from Precise Leads, Inc. ("Precise") and Digitas, Inc. ("Digitas"), pursuant to contracts with those companies. [ECF No. 61 at 19]. Liberty Mutual also claims that any damages it owes for TCPA violations were caused by Precise Leads' and/or Digitas' breaches of contract and/or negligence. <u>Id.</u>

---

[1] Liberty Mutual Insurance Company is also a Third-Party Plaintiff against Precise Leads, Inc. and Digitas, Inc. and will be referred to together with Liberty Mutual Group, Inc., as "Liberty Mutual."

Currently pending before the Court is Plaintiff's motion to compel discovery responses from Precise. [ECF No. 168]. For the following reasons, Plaintiff's motion to compel is GRANTED in part and DENIED in part.

I. DISCUSSION

"District courts exercise broad discretion to manage discovery matters." Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003); see Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996) (First Circuit "will intervene in such matters only . . . 'where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party'") (citation omitted). With respect to a motion to compel, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." TG Plastics Trading, Co. v. Toray Plastics, No. 09–336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010) (quoting Caouette v. Officemax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)); see also Karl v. Bizar, No. 09–34, 2009 WL 3418676, at *3 (S.D. Ohio Oct. 19, 2009) ("The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."). Discovery requests are also subject to the proportionality considerations articulated in Fed. R. Civ. P. 26(b)(1). See Sustainable Sourcing, LLC v. Brandstorm, Inc., No. 12–30093, 2017 WL 217747, at *2 (D. Mass. Jan. 18, 2017) ("concepts of relevance and proportionality dictate limits on the discovery to which Plaintiff is entitled"); Mass. Delivery Ass'n. v. Coakley, No. 10–11521, 2013 WL 5441726, at *2 (D. Mass. Sept. 26, 2013), reversed on other grounds, 769 F.3d 11 (1st Cir. 2014), (quoting Fed. R. Civ. P. 26(b)(2)(C)) (court is "required to limit the frequency or extent of otherwise allowable discovery if the same information 'can be obtained from some other source that is more convenient, less

burdensome, or less expensive . . . or [if] the burden or expense of the proposed discovery outweighs its likely benefit . . . .'").[2]

According to Liberty Mutual's third-party complaint, Precise was engaged by Liberty Mutual to generate customer leads by directing consumers interested in automobile insurance to Liberty Mutual. [ECF No. 61 at 21]. To this end, Precise and Liberty Mutual entered into a "Warm Transfer Agreement" pursuant to which Liberty Mutual retained Precise to transfer calls that met certain criteria to Liberty Mutual and to "collect relevant consumer information, place outbound calls to consumers, prequalify consumers, and transfer interested and qualified consumers to Liberty Mutual." [ECF No. 61-4 at 1−2]. Plaintiff contends that Precise, an agent of Liberty Mutual, has failed to provide interrogatory responses or produce documents that are relevant to the question of whether Liberty Mutual is vicariously liable for TCPA violations committed by third parties acting on its behalf. A seller, like Liberty Mutual, may be liable for the TCPA violations of third parties under "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." In re Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6584 (May 9, 2013). Accordingly, Plaintiff seeks to compel Precise to respond to various discovery requests, which the Court will address in turn.

---

[2] As a preliminary matter, the Court notes that although certain discovery with respect to Precise was limited at the May 27, 2016 hearing, the parties have not agreed to bifurcate discovery nor has the Court ordered it so. See Lowe v. CVS Pharmacy, Inc., No. 14−3687, 2015 WL 13427768, at *2 (N.D. Ill. Feb. 6, 2015) (citing Whiteamire Clinic, P.A., Inc. v. Quill Corp., No. 12−5490, 2013 WL 5348377, at *3−4 (N.D. Ill. Sept. 24, 2013)) ("[B]ecause discovery was not bifurcated, class-wide discovery is permissible at this point in the litigation").

A.  Policies

Plaintiff seeks to compel Precise to produce and describe policies related to generating leads, providing "warm transfers,"[3] or making solicitation calls for Liberty Mutual. Plaintiff argues that if Precise's policies violate the TCPA, and Liberty Mutual knew, Liberty Mutual may be vicariously liable. Moreover, the requested policies are purportedly relevant to establishing whether any TCPA violations by Liberty Mutual or Precise were willful or knowing. Precise asserts that the policies are not relevant, because it did not make any telemarketing calls for Liberty Mutual but rather acted as a "lead aggregation intermediary" that purchased leads generated by third parties and then transferred or sold those leads to others. Precise also claims that, under a theory vicarious liability, only policies that were "communicated" to Liberty Mutual can be relevant.

It is plain from the Warm Transfer Agreement that Liberty Mutual contracted with Precise to "collect relevant consumer information, place outbound calls to consumers, prequalify consumers, and transfer interested and qualified consumers to Liberty Mutual." [ECF No. 61-4 at 2]. Liberty Mutual also alleges in its third-party complaint that "[Precise], through [its] vendor partners, generate[s] customer leads for [Liberty Mutual]—directing consumers interested in auto insurance to [Liberty Mutual]." [ECF No. 61 at 21]. Given that the Warm Transfer Agreement and the third-party complaint both describe Precise as providing lead generation and other related services, the distinction between whether Precise itself or its vendors placed calls should not circumscribe—at least with respect to the requested policies—the scope of discovery at this stage of the proceedings. See In re Dish Network, 28 FCC Rcd. at 6584 ("seller may be

---

[3] Under the Warm Transfer Agreement, a "warm transfer" is defined as a call transferred to Liberty Mutual that satisfies certain specifications agreed upon by Precise and Liberty Mutual. [ECF No. 61-4 at 1, 9].

4

liable for violations by its representatives under a broad range of agency principles"). Under a theory of vicarious liability, the requested policies are also relevant to whether a TCPA violation by Precise or Liberty Mutual was knowing or reckless, assuming Liberty was aware of Precise's policies. See Meredith v. United Collection Bureau, Inc., No. 16–1102, 2016 WL 6649279, at *5 (N.D. Ohio Nov. 10, 2016) (information about third party's "policies, procedures, and actual practices—whether preceding or during the class period—is relevant to whether defendant's alleged TCPA violation was knowing or reckless"). Although Plaintiff might eventually need to show Liberty Mutual's awareness of such policies, relevant discovery need not be limited to information known to Liberty Mutual at this stage. Accordingly, Precise is ordered to respond to Interrogatory Nos. 13 and 14 and to produce, with respect to Document Requests Nos. 22, 23, and 24, policies that relate to activities performed on behalf of Liberty Mutual by Precise (or by Precise's vendors that were subject to such policies). Although Document Request Nos. 26 and 27 are overbroad as written, Precise is ordered to produce documents and communications that reference the failure, alleged failure, or possible failure of Precise or its vendors to comply with Precise's or Liberty Mutual's policies in performing under the Warm Transfer Agreement. Document Request No. 41 is also overbroad to the extent that it seeks any documents "relating to" policies concerning honoring requests to stop making calls or placing someone on an internal do-not-call list. With respect to Document Request No. 41, Precise is only ordered to produce responsive policies that are related or applicable to Precise's engagement with Liberty Mutual.

**B.    Written Scripts**

Document Request Nos. 18 and 19 target written scripts and documents "relating to the written scripts" used by Precise or a third party for making calls to generate leads or identify prospective customers for Liberty Mutual. Plaintiff claims that the written scripts may show how

5

Precise or its vendors handled requests by consumers not to be called again and whether Precise and/or Liberty Mutual was complying with the TCPA's do-not-call provisions. The FCC has noted that with respect to vicarious liability, "[i]t may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts." In re Dish Network, 28 FCC Rcd at 6592. Precise relies on its claim that it was not a caller or a seller but an intermediary for Liberty Mutual. For substantially the same reasons that the policies discussed above are relevant, the written scripts are also relevant in that they may demonstrate how calls were conducted and whether Precise and its vendors maintained compliance with the TCPA in performing under the Warm Transfer Agreement. Accordingly, with respect to Document Request Nos. 18 and 19, Precise is only ordered to produce written scripts used by Precise or its vendors to generate leads or identify prospective customers for Liberty Mutual, as well as documents that reflect policies and procedures related to the preparation of such written scripts.

### C. Audits and Investigations

Document Request No. 42 seeks the production of documents referring to audits, investigations, inquiries, or studies done by Precise or a third party concerning Precise's compliance with state and federal telemarketing laws. Plaintiff contends that such audits and investigations are relevant to whether "Liberty [Mutual] was 'on notice' of telemarketing violations." [ECF No. 168 at 20]. Plaintiff also asserts that "if an internal or external audit of Precise revealed issues with its telemarketing practices and Liberty [Mutual] knew about it, such audit is relevant to whether Liberty [Mutual] can be held liable." Id. Similar to the requests for policies and written scripts, the requested audits and investigations are relevant to the extent that they address lead generation and other services performed by Precise or its vendors under the Warm Transfer Agreement. Accordingly, Precise is ordered to produce responsive documents

only to the extent that they reference conduct performed by Precise or its vendors on behalf of Liberty Mutual.

   D.   **Complaints**

Document Request No. 35 seeks the production of complaints made to Precise, or of which Precise had notice, concerning lead generation or solicitation calls by Precise, Liberty Mutual, or a third party, including any lists or databases reflecting such complaints. Plaintiff claims that Precise improperly limited the scope of its response by addressing only complaints made by the named Plaintiff. Precise argues that it actually limited its response to "complaints regarding the services provided by [Precise] pursuant to its agreement with Liberty Mutual" but, to the knowledge of Precise, Plaintiff is the only person who has made such a complaint. [ECF No. 168 at 19].

Document Request No. 35 is overbroad to the extent that it covers complaints that do not relate to Precise's or its vendors' performance in connection with the Warm Transfer Agreement. Precise is ordered to produce complaints made to Precise regarding services provided by Precise or its vendors under the Warm Transfer Agreement. These materials may be provided in any usable format, including in a list or a database, but do not need to be produced in all available formats. If all of the responsive documents have already been produced, Precise shall provide a verified response to that effect.

**III.   CONCLUSION**

Consistent with this opinion, Plaintiff's motion to compel [ECF No. 168] is <u>GRANTED</u> in part and <u>DENIED</u> in part.

   **SO ORDERED.**

Dated: December 5, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE