UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL GROUP INC., | * * * * |
| Third-Party Plaintiffs, | * * |
| v. | Civil Action No. 15-cv-12920-ADB * * |
| PRECISE LEADS, INC. and DIGITAS, INC., | * * |
| Third-Party Defendants. | * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

This action, initially brought under the Telephone Consumer Protection Act ("TCPA"), now concerns how a settlement payment and litigation expenses should be apportioned among the original defendants and the third-party defendants.

**I.   BACKGROUND**

On July 8, 2015, Ken Johansen filed class action claims for violations of the TCPA against Liberty Mutual Group Inc. ("LMG") and Spanish Quotes, Inc ("Spanish Quotes"). [ECF No. 1]. The Court ordered that any motions for leave to amend the pleadings be filed by March 15, 2016. [ECF No. 49]. In March 2016, after obtaining leave, LMG and its subsidiary Liberty Mutual Insurance Company ("LMIC") (together, "Liberty Mutual") filed a Third-Party Complaint that asserted claims for contractual indemnity, breach of contract, and negligence against Precise Leads, Inc. ("Precise Leads") and Digitas, Inc. ("Digitas"). [ECF No. 61]. Liberty Mutual alleged that Precise Leads and Digitas were responsible for any violations of the TCPA as to Mr. Johansen but that they were, in violation of their agreements with Liberty Mutual, refusing Liberty Mutual's requests for indemnification. Liberty Mutual claimed

damages including attorneys' fees and costs and any other payment provided to Plaintiff to resolve this action. [ECF No. 61 at 24–31].

In early 2018, Mr. Johansen settled his claims against Liberty Mutual and Spanish Quotes, and on May 30, 2018, his claims were dismissed with prejudice. [ECF No. 184]. Liberty Mutual now seeks leave to file an Amended Third-Party Complaint that would add Massachusetts Chapter 93A § 11 claims against Precise Leads and Digitas. [ECF No. 181-1] ("PFAC"). Precise Leads and Digitas argue that the amendment is untimely and futile, and Precise Leads also argues that the motion is frivolous and that it should be awarded attorneys' fees and costs. [ECF Nos. 185, 186].

For the reasons explained herein, the Motion to Amend is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Precise Leads' motion for fees and costs is <u>DENIED</u>.

**II.    FACTS**

The following facts are drawn primarily from the Proposed Amended Third-Party Complaint, ECF No. 181-1, the well pled allegations of which must be taken as true for any evaluation regarding the futility of amending the Third-Party Complaint.

Liberty Mutual sells auto insurance policies to consumers. [PFAC at 8]. In April 2012, Digitas entered into a master services agreement to assist LMIC in marketing auto insurance policies by generating customer leads. [PFAC at 9]. The master services agreement contained a mutual indemnification provision under which Digitas was obligated to indemnify Liberty Mutual for:

> all third party claims, damages, liabilities, costs and expenses, including reasonable legal fees and expenses . . . to the extent arising out of any breach of warranty, representation, covenant, obligation or agreement made by the indemnifying party in this Agreement, provided that in no event shall a party indemnify another party to the extent of any Claim arising on account of the gross negligence or intentional misconduct of any Indemnitee.

2

[PFAC at 9]. Under the agreement, indemnity is conditional upon prompt written notice of any claim, the opportunity for complete control of the defense and settlement, and reasonable cooperation from the indemnified party. [PFAC at 9]. Digitas warranted that it would use commercially reasonably efforts that would not give consumers grounds for asserting certain claims, including invasion of the right of privacy, and that it would comply with the requirements of applicable statements of work. [PFAC at 10].

On February 6, 2015, under the framework provided for by the master services agreement, Liberty Mutual and Digitas agreed to a statement of work to help drive acquisition of new customers through "paid search, aggregator and affiliate landing pages." [PFAC at 10]. The statement of work did not include outbound calls, but Digitas made such calls and did so without adequate procedures to ensure compliance with the TCPA, including the unlawful calls to Mr. Johansen that led to this lawsuit. [PFAC at 10–11, 26–27]. Liberty Mutual notified Digitas of Mr. Johansen's claims on August 7, 2015 and gave Digitas the opportunity to take complete control of the defense and settlement of this litigation on that date and several times thereafter. [PFAC at 11]. Liberty Mutual also made numerous requests for indemnification between August 2015 and February 2016. [PFAC at 11]. Digitas never took control of the litigation and refused to indemnify Liberty Mutual for its costs. [PFAC at 11].

Precise Leads also entered an agreement with Liberty Mutual to support certain marketing activities. [PFAC at 12]. The Precise Leads agreement contained a mutual indemnification provision that required indemnification:

> against any and all claims, losses, costs and expenses, including reasonable attorneys' fees, which the Indemnified Party may incur as a result of claims in any form by third parties . . . arising from . . . [t]he Indemnifying Party's acts omissions or misrepresentations to the extent that the Indemnifying Party is deemed an agent of the Indemnified Party or otherwise, . . . or [a]ny breach of this Agreement . . . by the Indemnifying Party.

3

[PFAC at 12]. Precise Leads agreed to "observe and comply with any and all applicable federal, state and local statutes, laws, rules, regulations, judgments, orders and decrees which may apply to its performance" under its agreement with Liberty Mutual. [PFAC at 12]. Like Digitas, Precise Leads failed to comply with the TCPA and was responsible for initiating some of the calls complained of by Mr. Johansen. [PFAC at 12, 24]. Liberty Mutual provided formal notice to Precise Leads in January 2016 and requested indemnification, but Precise Leads, like Digitas, refused to indemnify Liberty Mutual. [PFAC at 13].

Liberty Mutual's March 2016 Third-Party Complaint, ECF No. 61, asserted substantially all the facts alleged in the PFAC. Liberty Mutual has, however, continued to accrue legal fees and costs since March 2016, engaged in discussions about how to share costs with the third-party defendants, and paid a portion of the settlement payment due to Mr. Johansen that should have been covered by the Third-Party Defendants. [PFAC at 9; see also ECF No. 186-1]. Liberty Mutual argues that Digitas and Precise Leads engaged in "bad faith and unfair conduct in avoiding their clear contractual obligation" to indemnify Liberty Mutual, and that this bad faith an unfair conduct "began when the lawsuit was filed" and continued at least until the settlement agreement with Mr. Johansen. [ECF No. 187 at 2]. Although Liberty Mutual was not required to send a demand letter before bringing claims, it sent a demand letter to Digitas alleging violation of Chapter 93A on July 21, 2017 but did not seek leave to amend its Third-Party Complaint for ten months thereafter. [ECF No. 186-1].

**III.    LAW**

Federal Rule of Civil Procedure 15(a) adopts a "liberal amendment policy" and "provides that a court 'should freely give leave when justice so requires.'" United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)). "[E]ven

4

so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." Gagne 565 F.3d at 48 (citing Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Rost v. Pfizer, Inc., 507 F.3d at 733–34).

IV. DISCUSSION

A. Undue Delay

Leave to amend after discovery is most appropriate where new allegations "come to light following discovery," or where previously unearthed evidence surfaces. Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011). Leave to amend pleadings is not appropriate where it appears that a plaintiff is "scrambling to devise 'new theories of liability [ ] based on the same facts pled in his original complaint,'" if those theories "could and should have been put forward in a more timeous fashion." Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 391 (1st Cir. 2013) (quoting Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir.1983)).

Although Precise Leads and Digitas refused to pay Liberty Mutual's attorneys fees and the other costs associated with this action at least as early as March 2016, when Liberty Mutual filed its Third-Party Complaint and asserted those expenses as damages, Liberty Mutual waited until May of 2018 to seek leave to amend the Third-Party Complaint and add a claim under Chapter 93A. Considering that Liberty Mutual was aware of Precise Leads' and Digitas's refusal to indemnify more than two years prior to seeking leave to amend and alerted Digitas of its potential Chapter 93A claims ten months before seeking leave to amend, the motion to amend the complaint was untimely. See Villanueva, 662 F.3d at 126–28 (per curiam) (affirming denial

5

of leave to amend complaint sought four months after initial complaint was filed); Kay v. N.H. Democratic Party, 821 F.2d 31, 34 (1st Cir. 1987) (affirming denial of leave based on three months delay despite facts elicited during discovery and defects in complaint that could be corrected by amending). Although the Court suggested that it might allow additional discovery in this matter during the parties last status conference, additional discovery was conditioned upon the Court's consideration of the Proposed Amended Third-Party Complaint and the associated briefing. Cf. Tele-Connections, Inc. v. Perception Tech. Corp., No. CIV.A. 88-2365-S, 1990 WL 180707, at *2 (D. Mass. Nov. 5, 1990) (denying motion to amend where Plaintiff should have become aware of his Chapter 93A claims earlier and noting lack of "good cause" to amend discovery scheduling order under Rule 16).

Liberty Mutual's arguments that the operative time period for the timeliness analysis should be viewed as nine months due to stays of discovery and that new facts justify the delay are unavailing. Liberty Mutual's Chapter 93A claims are based on Digitas' and Precise Leads' refusals to indemnify Liberty Mutual—a refusal first made in 2015 and reasserted several times thereafter. Liberty Mutual appears to have made a strategic choice to delay adding its Chapter 93A claims until after it had resolved Mr. Johansen's claims, presumably because its Chapter 93A claims and its arguments for leave to amend might suggest that its venders had indeed violated the TCPA as alleged in the initial complaint. [See, e.g., ECF No. 187 at 10 ("Because these two calls from Precise Leads, or its vendor, occurred within a 12-month period, Precise Leads exposed Liberty to potential liability under [the] TCPA")]. Although perhaps a wise and understandable legal decision, that strategic choice does not warrant leave to amend under Rule 15 given the facts of this case. Fed. R. Civ. P. 15(a)(2); Nikitine, 715 F.3d at 390 ("A district

court pondering whether to grant or deny a motion for leave to amend a complaint must consider the totality of the circumstances. . . . Everything depends on context.").

Therefore, Liberty Mutual's Motion for Leave to Amend to add claims under Chapter 93A is DENIED with respect to its Chapter 93A claims. Liberty Mutual may, however, file its First Amended Cross-Claim and Third-Party Complaint without the Chapter 93A claims so that the operative complaint reflects the current status of this litigation.

### B. Fees

Precise Leads' motion for an award of costs and expenses is DENIED. Precise Leads fails to specify the legal basis for its motion, claiming only that Liberty Mutual is in possession of unspecified information that it knows, or should reasonably know, precludes it from being able to succeed on its proposed Chapter 93A claims. [ECF No. 185 at 15]. Although the Court possesses powers to sanction attorneys who file motions for an improper purpose, who make legal contentions that are unwarranted or factual assertions that are without support, or who "unreasonably and vexatiously" "multipl[y] the proceedings in any case," the filing of the instant motion to amend does not approach those criteria given that the timeliness issue requires a close analysis of the facts as well as the interests of justice. 28 U.S.C. § 1927; Fed. R. Civ. P. 11. Precise Leads' futility argument would also present a close question of law, were it necessary to reach that issue.[1]

## V. CONCLUSION

Accordingly, Liberty Mutual's Motion for Leave to Amend its Third-Party Complaint to add claims under Chapter 93A is DENIED. Liberty Mutual's motion is GRANTED insofar as it

---

[1] "A breach of contract, without more will not constitute a 93A violation." 52 Mass. Prac., Law of Chapter 93A § 9.1 (2018). "In order for breach of contract to constitute a [Chapter] 93A violation, there must be 'some egregious circumstance surrounding that breach.'" Baker v.

7

seeks leave to file an Amended Cross-Claim and Third-Party Complaint without the Chapter 93A claims.  Precise Leads' motion for an award of costs and expenses is DENIED.

The Court expects that discovery required for summary judgment has been substantially completed given that the Chapter 93A claims will not be added.  The parties shall file a proposed summary judgment briefing schedule by January 18, 2019 and shall also report on their efforts to resolve this action.

**SO ORDERED.**

January 12, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014) (quoting Stonehill Coll. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 205, 229–30 (Mass. 2004)); see also In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 185 (1st Cir. 2009) ("[A]t least between commercial entities, 'the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce,' that is to say, 'the defendant's conduct must be not only wrong, but also egregiously wrong.'" (quoting Mass. School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 41–42 (1st Cir.1998)). Whether the Proposed Amended Third-Party Complaint plausibly alleges the requisite level of rascality is a close issue that the Court will not address given its conclusion that the motion to amend was not timely filed.