UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEN JOHANSEN, individually and on behalf
of all others similarly situated,

             Plaintiff,

             v.

LIBERTY MUTUAL GROUP, INC., and
SPANISH QUOTES, INC. d/b/a
WESPEAKINSURANCE,

             Defendants,

LIBERTY MUTUAL GROUP, INC.,

             Cross-Claimant,

             v.

SPANISH QUOTES, INC. d/b/a
WESPEAKINSURANCE,

             Cross-Defendant,

LIBERTY MUTUAL GROUP, INC.,
LIBERTY MUTUAL INSURANCE
COMPANY,

             Third-Party Plaintiffs,

             v.

PRECISE LEADS, INC., and DIGITAS, INC.,

             Third-Party Defendants.

Civil Action No. 15-cv-12920-ADB

## MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

This case began as a putative class action complaint against Liberty Mutual Group Inc. ("Liberty Mutual"), and Spanish Quotes Inc. ("Spanish Quotes"), which does business as WeSpeakInsurance. [ECF No. 1]. Plaintiff Ken Johansen alleged that Liberty Mutual and Spanish Quotes called him, or caused him to be called, multiple times in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), despite his number being listed on the National Do-Not-Call Registry and his request that Liberty Mutual not call him again.

Mr. Johansen settled with Liberty Mutual and Spanish Quotes, and his claims against them were dismissed with prejudice on May 30, 2018. [ECF No. 184]. The Defendants were then unable to agree whether Liberty Mutual was entitled to indemnity under the Master Services Agreement ("MSA") between Liberty Mutual and Digitas and the associated Aggregator Service Agreement ("ASA") with Spanish Quotes. The matter escalated from there. Now, as described in an email between the parties, "it appears that Liberty and Digitas [are] pointing their fingers at each other, . . . making the case both more difficult to defend . . . and more expensive to resolve." [ECF No. 194-7 at 3].

Presently before the Court are Digitas and Liberty Mutual's respective motions for summary judgment. [ECF Nos. 191, 195]. For the reasons explained herein, the cross-motions for summary judgment [ECF Nos. 191, 195], are each <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I. BACKGROUND

### A. Procedural History

On February 12, 2016, after Mr. Johansen filed his class action complaint, Liberty Mutual gave notice under Local Rule 15.1 of its intent to file a motion for leave to file an

amended answer with a third-party claim against Digitas. On March 4, 2016, Liberty Mutual filed the motion to amend its answer, [ECF No. 57], which was granted on March 24, 2016, [ECF No. 60]. Liberty Mutual then filed its Amended Answer on March 24, 2016, [ECF No. 61], which included a third-party complaint against Digitas, alleging that Digitas is under a contractual obligation to indemnify, and that Liberty Mutual is entitled to contractual damages because Digitas failed to comply with federal law, failed to use reasonable efforts to prevent claims against Liberty Mutual, and failed to perform its duties in a competent and professional manner. [Id. ¶¶ 37, 43, 52, 54, 55 (Third-Party Compl.)]. Liberty Mutual also filed a cross-claim against Spanish Quotes, alleging that Spanish Quotes is under a contractual obligation to indemnify under its agreement with Digitas, in which it agreed to indemnify Digitas and Digitas' client. [Id. ¶¶ 16, 23 (Cross-Claim)].[1]

In April 2016, Digitas moved to dismiss the third-party complaint, claiming that it had paid Mr. Johansen, which mooted his case (and thus the third-party complaint). [ECF Nos. 68, 69]. Liberty opposed that motion. [ECF No. 82]. The Court denied the motion on December 8, 2016. [ECF No. 123].

Digitas next moved for summary judgment on February 28, 2019, [ECF Nos. 191, 192]; Liberty Mutual responded to that motion on March 29, 2019, [ECF No. 203]; and Digitas replied on April 19, 2019, [ECF No. 205]. Meanwhile, Liberty Mutual also moved for summary

---

[1] Liberty Mutual also brought a number of claims against Precise Leads, Inc., ("Precise Leads"). [ECF No. 61 ¶¶ 29, 35, 45, 46, 58, 59, 61 (Third-Party Compl.)]. On July 8, 2019, Liberty and Precise Leads filed a joint motion for entry of dismissal of Liberty Mutual's claim, as the parties had settled. [ECF No. 208]. Digitas responded and requested that the claim be dismissed without prejudice, so that it could pursue its own indemnity claim against Precise Leads in the event that it was found liable to Liberty Mutual. [ECF No. 210]. On July 19, 2019, the Court dismissed Liberty Mutual's claims against Precise Leads with prejudice. [ECF No. 213].

judgment on February 28, 2019, [ECF Nos. 195, 196]; Digitas responded to that motion on

March 29, 2019, [ECF No. 198]; Spanish Quotes responded on March 29, 2019, [ECF No. 200];

and Liberty Mutual responded to both Digitas' and Spanish Quotes' responses on April 19, 2019,

[ECF Nos. 206, 207].[2]

### B. Factual Summary

The following facts are either uncontroverted pursuant to Federal Rule of Civil Procedure

56 and Local Rule 56.1, or stated in the light most favorable to the non-movant on each issue.

#### 1. The Underlying Contractual Provisions

Liberty Mutual is a diversified insurer, which provides car insurance policies to

individual customers. [ECF No. 1 ¶ 15; ECF No. 61 ¶¶ 3, 9 (Third-Party Compl.)]. Liberty

Mutual entered into a marketing agreement with Digitas, a Boston-based marketing firm, [ECF

No. 61 ¶¶ 4, 9 (Third-Party Compl.)], which includes the following language:

> Each party agrees to indemnify and hold harmless the other party and their
> respective officers, directors, shareholders, members, managers, partners,
> employees, accountants, attorneys, agents, affiliates, subsidiaries, and permitted
> successors and assigns (collectively, the "Indemnitiees") from and against any and
> all third party claims, damages, liabilities, costs and expenses, including reasonable
> legal fees and expenses (collectively, "Claims"), to the extent arising out of any
> breach of any warranty, representation, covenant, obligation or agreement by the
> indemnifying party in this Agreement, provided that in no event shall a party
> indemnify another party to the extent of any Claim arising on account of the gross
> negligence or intentional misconduct of any Indemnitee. The foregoing indemnity
> is conditioned upon (i) prompt written notice by the indemnified party to the
> indemnifying party of any claim, action, or demand for which indemnity is claimed;
> (ii) the opportunity for complete control of the defense and settlement thereof by
> the indemnifying party; and (iii) such reasonable cooperation, at the indemnifying
> party's expense, by the indemnified party in the defense as the indemnifying party
> may request.

[ECF No. 195-2 at 11, § 14].

---

[2] Spanish Quotes did not move for summary judgment. The Court therefore will not consider its
request to "dismiss[] Liberty's claim for contractual indemnity . . . ." [ECF No. 200 at 12].

On February 6, 2015, Digitas and Liberty Mutual entered into a Statement of Work ("SOW"). The SOW describes the covered marketing tactics as "paid search, aggregator, affiliate and landing pages (tracking and read out only) . . . ." [ECF No. 195-3 at 2]. The MSA incorporates the SOW by reference. In the MSA, Digitas warranted that "All Services will be performed in a competent and professional manner by qualified personnel and will conform to [Liberty Mutual's] requirements as specified in the applicable SOW." [ECF No. 195-2 at 8, § 9.a.v]. The MSA also requires that Digitas "provide to [Liberty Mutual], to the extent possible, the full benefit of all covenants, warranties, representations and indemnities granted to Digitas by third parties in connection with any Services or Deliverables." [Id. at 8, § 9.a.vii]. Liberty Mutual failed to sign the SOW. [ECF No. 195-3 at 14].

Digitas then entered into the ASA with Spanish Quotes, which acts as an insurance shopping tool to help individual customers find quotes on auto and home insurance. [ECF No. 1 ¶17]. The ASA provides that Spanish Quotes "further warrants that Services will meet the specifications in all material respects and will not violate the proprietary rights of any third party, or otherwise violate any other laws, rules or regulations of the United States." [ECF No. 195-4, at 4, § 7.a; ECF No. 199 ¶ 10; ECF No. 202 ¶ 9]. The ASA also included its own indemnity provision. Incorporating the relevant party terms, the ASA indemnity provision provides:

> [Spanish Quotes] agrees to indemnify, defend and hold harmless [Digitas], its affiliates, subsidiaries, officers and employees, as well as any [Digitas] Client, Client's affiliates, subsidiaries, officers and employees, from and against any and all claims, damages, liabilities, losses and/or expenses, including reasonable attorney fees, (collectively "Losses") incurred by [Digitas] and/or its Client and arising from a breach of the foregoing warranties, breach of the Privacy and Data Security Terms (if applicable) or any other material breach of this Agreement.

[ECF No. 195-4 at 4–5, § 7.d].

2.      <u>Mr. Johansen Initiates This Lawsuit</u>

On June 13, 2014, a person identified as "Rita Johansen" visited autoquotesdirect.com and indicated that she was interested in receiving auto insurance for a 2003 Honda Accord and consented to receive a call from a number of insurance providers, including Liberty Mutual. [ECF No. 195-16].  On February 17, 2015, Ken Johansen received a call from a representative of Auto Insurance Services.  [ECF No. 199 ¶ 23].  After Mr. Johansen confirmed that he had requested an auto insurance quote, the Auto Insurance Services representative transferred the call to Liberty Mutual.  [<u>Id.</u> ¶ 24].  On February 18, 2015, Mr. Johansen received another call from a representative of Auto Insurance Services.  [<u>Id.</u> ¶ 25].  He confirmed that he had requested insurance information and was subsequently transferred to Liberty Mutual.  [<u>Id.</u> ¶¶ 25–26].  The same thing happened on February 20 and March 16, 2015.  [<u>Id.</u> ¶¶ 29, 31].  A caller, later identified as Ken Johansen, subsequently called Liberty Mutual to complain that telemarketers had been calling his house.  [ECF Nos. 199-2, 199-3 (documenting Digitas' and Liberty Mutual's conversations regarding the caller)].

On March 24, 2015, Liberty Mutual contacted Digitas to inform them of Mr. Johansen's complaints and to request that Spanish Quotes "track down the source based on the caller ID and shut them down."  [ECF No. 199-3].  In subsequent email communications between Liberty Mutual and Digitas, it was determined that each of the calls that Mr. Johansen was complaining about had been "transfers," in which a third party called Mr. Johansen and then transferred his call to Liberty Mutual to speak with a representative.  [<u>Id.</u>].  Apparently the transfers had been made from a site that Spanish Quotes had previously tried to shut down as a call source.  [<u>Id.</u>].

As a policy, Digitas did not allow transfers.  [ECF No. 195-17 at 4–7 ("We have taken measures on our end that we believe should resolve the issue of him being transferred into our

call center, with the key word being 'transferred.' We do not allow 'transfers' in our call programs, so when [Mr. Johansen] made his way into our call center, it has been against our program rules.")].[3] Digitas explained to Liberty Mutual, via email, that none of its work for Liberty Mutual should include calls in which a customer was transferred to speak to a Liberty Mutual representative. See, e.g., [ECF No. 195-18 at 3 ("[N]one of the campaigns [that Digitas worked with Liberty Mutual on] should have calling out as a feature; if there are any outbound calls happening that then lead to transfers, [Digitas] jump[s] on them as soon as [it] hear[s] about them.")].[4]

On July 8, 2015, Mr. Johansen, individually and on behalf of a putative class, filed a complaint against Liberty Mutual and Spanish Quotes, alleging violations of the TCPA. [ECF No. 1].

### 3. Liberty Mutual Notifies Digitas of the Johansen Lawsuit

On August 7, 2015, Liberty Mutual notified Digitas of the Johansen lawsuit. [ECF No. 199 ¶ 57]. On January 11, 2016, counsel for Digitas informed counsel for Liberty Mutual that Digitas was "inclined to enter into an agreement with Liberty to fund 40% of the defense of the underlying TCPA action if Precise Leads [did] the same. Since there [we]re issues about the information received and provided to Liberty which may or may not have been forwarded to or among the vendors, [Digitas] th[ought] it [wa]s important for Liberty to continue to have some

---

[3] Although Digitas denies that this email chain is admissible evidence, it also attaches other sections of the relevant email conversation to its statement of facts in response. See [ECF Nos. 195-17, 199 ¶ 38, 199-3]. Additionally, the relevant statements were all made by Digitas representatives.

[4] Although Digitas also objects to the admissibility of this email from its Manager of Search Marketing, [ECF No. 199 ¶ 40], it is from the same email exchange that it attached to its own statement of facts in response to Liberty Mutual, [ECF No. 199-2].

skin in the game." [ECF No. 194-4 at 1]. Digitas' counsel suggested tolling indemnification issues "until after [counsel determined] if there is anything to indemnify for." [Id.]. On January 14, Liberty Mutual's counsel responded saying that it had relayed the proposed terms to its client. [ECF No. 194-5 at 1].

On January 22 and 23, 2016, Digitas offered to pay for the defense of the case, with the understanding that

> (1) Digitas . . . would control the defense; (2) the parties would enter into a tolling agreement with respect to responsibility for any judgment or settlement; (3) Digitas . . . would reserve their right to seek reimbursement of fees paid as discovery proceeded and the relative responsibility of the parties for any judgment or settlement; (4) Digitas . . . would pay a portion of Liberty Mutual's fees and costs to date, subject to review of the relevant invoices; and (5) Digitas . . . could withdraw from the defense if [it was] named as part[y] or it appeared that the defense of Liberty placed [it] at unreasonable risk of loss.

[ECF No. 194-6 at 1–2; ECF No. 204 ¶ 9;].

> Liberty Mutual's counsel responded to Digitas' proposal on January 25, 2016, explaining:

> If Digitas intends to take complete control of the defense of the pending litigation pursuant to the terms of the Master Services Agreement effective as of April 1, 2012, then Liberty Mutual is entitled to full and complete indemnity of all claims, damages, liabilities, costs and expenses, including all past and future reasonable legal fees and expenses associated with the pending litigation. The foregoing includes claims against any current parties or third parties. It is not subject to reservations of any kind. Liberty Mutual will provide reasonable cooperation in the defense of the litigation, as requested by Digitas and at Digitas' expense, as stated in paragraph 14 of the Master Service Agreement.

[ECF No. 194-6 at 1; ECF No. 204 ¶ 10].

On January 23, Digitas responded that it would "take over the defense of the *Johansen* case on the terms set out below . . . ." [ECF No. 194-6 at 1]. Those terms included that Liberty Mutual could participate in the defense at its own expense, subject to Digitas' decisions, and that Liberty Mutual's cooperation would be at its own expense. [Id. at 1–2].

On February 3, 2016, Liberty Mutual's counsel responded, informing Digitas that Liberty Mutual disagreed with many of the statements in Digitas' offer email. [ECF No. 194-7]. Both parties rely on that email in support of their arguments concerning whether Liberty Mutual adequately performed all of the conditions precedent in order to be indemnified. In relevant part, the email stated:

> 1. Liberty has <u>never</u> tendered the defense of the pending litigation to Digitas pursuant to the Master Services Agreement effective as of April 1, 2012 ("MSA"). During Liberty's good faith negotiations of a tolling agreement over the last few weeks, you advised me that if Digitas and Precise Leads were going to cover 80% of the defense costs of the litigation, Digitas would likely avail itself of the opportunity to take full control of the defense of the litigation pursuant to paragraph 14a of the MSA. You first advised me that Digitas elected to take over the defense of the litigation in your email to me on Sunday, January 23, 2016, but subject to the reservations in your email and that of Precise Leads' counsel.
>
> 2. Liberty has <u>never</u> "refused to allow Digitas to accept and assume the defense" of the litigation.
>
> 3. Digitas has <u>never</u> given Liberty an unqualified acceptance of the defense of the pending litigation, including the terms in your January 29th email.
>
> 4. Liberty has <u>never</u> demanded that Digitas assume the defense of the litigation. Liberty has made it clear that if Digitas does exercise its right to take complete control of the defense, then it has to indemnify Liberty from any costs already incurred and any judgment or settlement in the pending litigation. . . .
>
> . . .
>
> 7. Liberty has made it clear that it would provide all reasonable cooperation to Digitas and its counsel should it elect to take control of the litigation under the MSA. This cooperation assumes that Digitas elected to take complete control of the litigation. As I have explained to you – Digitas' General Counsel advised me last Summer that it had no intention of taking control of the litigation, and preferred to be left out all together. If Digitas lives up to its obligation to indemnify Liberty, it will provide all reasonable and necessary cooperation as requested by Digitas in the defense of the litigation – and at Digitas' expense as clearly specified in paragraph 14a of the MSA.

[<u>Id.</u> at 1 (emphasis in original)].

In response, Digitas' counsel informed Liberty Mutual that it did not believe that it had any obligation to Liberty Mutual with respect to indemnity because there had been "no formal tender of defense from Liberty under the MSA . . . ."  [ECF No. 194-8 at 2].

      4.      <u>Liberty Mutual Files This Third-Party Complaint</u>

On February 12, 2016, Liberty Mutual gave notice under Local Rule 15.1 that it intended to file a motion for leave to file an amended answer with a third-party complaint against Digitas, [EFC No. 194-9], and filed that motion on March 4, 2016, [ECF No. 57].  The Court approved the motion, and Liberty Mutual filed its amended answer, including its third-party complaint and cross-claim.  [ECF Nos. 60, 61].

Digitas filed a motion to dismiss the complaint in April 2016, asserting that it was under no duty to indemnify Liberty Mutual because Liberty Mutual had failed to "tender its defense" to Digitas.  [ECF Nos. 68, 69].  The Court denied that motion on December 8, 2016, finding that the MSA did "not actually require that the request for defense be 'tendered.'  Instead, the MSA required only that the party provide '(ii) the opportunity for complete control of the defense and settlement thereof by the indemnifying party.'"  [ECF No. 123 at 19].  The February 3, 2016, email from Liberty Mutual's counsel "provide[d] sufficient evidence of 'the opportunity for complete control of the defense and settlement thereof' to defeat a motion to dismiss."  [<u>Id.</u>].

On April 21, 2017, Digitas again proposed an agreement concerning the course of defense in the Johansen lawsuit.  The terms were largely similar to those discussed above, but also contemplated that any issues concerning indemnity would be resolved through alternative dispute resolution after the Johansen suit had been resolved.  [ECF No. 194-11; ECF No. 204 ¶22].  Liberty Mutual would also provide Digitas with copies of its legal bills, so that Digitas could determine what portion it would pay.  [ECF No. 194-11].  At Liberty Mutual's request,

Digitas also provided the declarations page from its liability insurance policy. [ECF Nos. 194-11 at 2, 194-12]. Finally, Digitas' counsel claimed that "Digitas cannot pursue its preferred course of defense as long as Liberty Mutual declines to cooperate. Obviously, as long as Liberty Mutual declines to cooperate, Liberty Mutual cannot fairly assert it has fulfilled the conditions of Section 14(a) of the MSA." [ECF No. 194-11 at 3].

In June 2017, Liberty Mutual's counsel wrote a letter to Digitas' counsel requesting the entire relevant insurance policy. [ECF No. 194-13]. Digitas' counsel provided a redacted copy of the policy for Attorney's Eyes Only. [ECF No. 194-14]. In turn, Liberty Mutual provided its legal bills in connection with the Johansen lawsuit. [ECF No. 194-16].

On July 21, 2017, Liberty Mutual made a demand on Digitas for relief under Massachusetts consumer protection law, Massachusetts General Laws Chapter 93A, based on the same indemnity claim at issue in this case. [ECF No. 194-18].

Digitas presented another offer on November 20, 2017. The offer provided that: (1) Digitas and Precise Leads would make an immediate payment to Liberty Mutual based on the legal bills related to the Johansen case, but unrelated to the third-party complaint; (2) Digitas would assume control of Liberty Mutual's defense; (3) Liberty Mutual would drop its third-party claim against Digitas; and (4) Digitas would have no further obligation to Liberty Mutual under any agreement, "unless judgment is entered against Liberty Mutual based on a specific finding that the judgment resulted from Digitas's . . . breach of the relevant agreement, or all three agree upon a settlement with Plaintiffs that includes payments from Digitas . . . ." [ECF No. 194-19, at 1–2].

5.      Mr. Johansen Settles the Underlying Lawsuit

On January 3, 2018, Mr. Johansen proposed to settle his individual claims. On February 7 and 9, 2018, Liberty Mutual's counsel told Digitas of his discussions with Mr. Johansen's counsel concerning the settlement amount. [ECF No. 194-21]. During settlement negotiations, Liberty Mutual accused Digitas of "acting unreasonably in its position" on the settlement offer. [ECF No. 194-20 at 4]. According to Liberty Mutual's letter to Digitas, which Digitas has submitted as evidence:

> [I]n early January 2018, Plaintiff offered to dismiss his complaint against Liberty Mutual and Spanish Quotes with prejudice if Liberty Mutual paid him [redacted] in settlement of his individual claims. Liberty Mutual immediately communicated Plaintiff's offer to Digitas and Precise Leads. On January 24, 2018, Digitas indicated that it would be willing pay Plaintiff the money Digitas previously deposited into the escrow account in Plaintiff's name in 2016, which originally was [redacted] and [Digitas] advised is now [redacted]. Together with Precise Leads' offer of [redacted], Digitas instructed Liberty Mutual to respond to Plaintiff with a counteroffer of [redacted]. Liberty Mutual complied and communicated the counteroffer to Plaintiff on February 1, 2018.

[Id.]. After a few rounds of offers and counteroffers, Mr. Johansen made a final offer, which Liberty Mutual brought to Digitas and Precise Leads, with a request that they agree to it. [Id. at 5].

Throughout the settlement negotiations, Digitas' position remained that it had "no defense or indemnity obligations to Liberty Mutual because Liberty Mutual ha[d] not met all of the conditions for indemnity set out in the [MSA]." [ECF No. 194-22 at 1]. It accused Liberty Mutual of "insist[ing] on controlling all discussions with Johansen's counsel" and argued that it was yet another example of Liberty Mutual failing to abide by "the plain contractual obligations to tender control of Liberty's defense to Digitas if Liberty wants to be indemnified . . . ." [ECF No. 194-22 at 2].

On March 1, 2018, Liberty Mutual circulated a draft of a settlement agreement, and the parties worked with each other in revising the draft agreement. [ECF No. 194-23]. Liberty

Mutual then requested final edits from Digitas before it sent the proposed agreement to Mr. Johansen's counsel.  [ECF No. 194-24].

## II.    STANDARD OF REVIEW

Liberty Mutual and Digitas have filed dueling motions for summary judgment.  [ECF Nos. 191, 195].  Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if its resolution might affect the outcome of the case under the controlling law. . . .  A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial."  Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'"  Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Once the movant takes the position that the record fails to make out any trial worthy question of material fact, "it is the burden of the nonmoving party to proffer facts

sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

## III.   DISCUSSION

### A.   Liberty's Claim of Indemnity Under the MSA

Liberty Mutual claims that Digitas violated its duty to indemnify in accordance with § 14 of the MSA. [ECF No. 61 ¶¶ 36–43 (Third-Party Compl.)]. "When there is an *express* agreement of indemnity in a contract, a claim for indemnity accrues when there is a breach of that provision." Fall River Hous. Auth. v. H.V. Collins Co., 604 N.E.2d 1310, 1312 (Mass. 1992) (emphasis in original). "Under Massachusetts law, where material facts are not in dispute, interpretation of an indemnity clause is an issue of law." Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 215 (1st Cir. 2006) (citing Post v. Belmont Country Club, Inc., 805 N.E.2d 63, 67 (Mass. App. Ct. 2004)). In interpreting the agreement, "[w]ords that are plain and free

from ambiguity must be construed in their usual and ordinary sense . . . ." Bukuras v. Mueller

Grp., LLC, 592 F.3d 255, 262 (1st Cir. 2010) (quoting Cady v. Marcella, 729 N.E.2d 1125,

1129–30 (Mass. App. Ct. 2000)).  The agreement must be understood "in a reasonable and

practical way, consistent with its language, background, and purpose."  Id.

The fact that the parties disagree over the proper interpretation of the indemnity provision

is insufficient to establish ambiguity.  Lumberman's Mut. Cas. Co. v. Offices Unlimited, Inc.,

645 N.E.2d 1165, 1168 (Mass. 1995).  A contract provision is only ambiguous "if it is

susceptible [to] more than one meaning and reasonably intelligent persons would differ as to

which meaning is the proper one."  Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 953 (Mass.

1998).

1.    Whether There is a Qualifying Third-Party Complaint Against Liberty
Mutual in this Case

Digitas claims that the MSA indemnity provision is inapplicable because it only relates to

third-party claims and Liberty Mutual has failed to identify a relevant third-party claim.  [ECF

No. 198 at 5].  According to Digitas, the third-party action in this case, Mr. Johansen's original

lawsuit, did not arise out of Digitas' SOW with Liberty Mutual.  [Id.].  Therefore, Liberty

Mutual cannot seek indemnity based on an alleged violation of the SOW.  [Id.].

In its Amended Answer, which includes the third-party complaint at issue, Liberty

Mutual referenced the MSA's explicit warranty that "[a]ll services w[ould] be performed in a

competent and professional manner by qualified personnel and will conform to the Client's

requirements as specified in the applicable SOW."  [ECF No. 61 ¶ 20 (Third-Party Compl.)].

The Court previously summarized the claim as follows: "The statement of work did not include

outbound calls, but Digitas made such calls and did so without adequate procedures to ensure

compliance with the TCPA, including the unlawful calls to Mr. Johansen that led to this lawsuit."

Liberty Mut. Ins. Co. v. Precise Leads, Inc., No. 15-cv-12920, 2019 WL 186657, at *2 (D. Mass. Jan. 12, 2019), ECF No. 188.  Liberty Mutual has therefore identified a third-party claim that arose from Digitas' alleged violations of the MSA.

2.      Whether Digitas and Spanish Quotes Breached Their Warranties Regarding the Nature of Their Services

Liberty Mutual argues that Digitas breached its MSA warranty regarding the nature of the services it would provide.  [ECF No. 196 at 7].  Specifically, the SOW specified that the authorized tactics to be used by Digitas included "paid search, aggregator, affiliate and landing pages (tracking and readout only)."  [ECF No. 195-3 at 2].

The SOW did not reference the use of "warm transfers."  With a warm transfer, after a customer has consented to receive a quote, an outbound call is made to verify the interest.  [ECF No. 199 ¶ 16].  The call is then transferred to the insurance provider to provide that quote.  [Id.]. The SOW also does not reference the use of "Lead Forms."  [ECF No. 195-3 at 2].  With a "Lead Form," an outbound call is made to a customer after that customer has completed an online form requesting contact information and consenting to be called.  [ECF No. 199 ¶¶ 16–17]. According to Liberty Mutual, there is nothing in the summary judgment record to dispute the material fact that it prohibited warm transfers by phone or Lead Form.  [ECF No. 196 at 8]. Digitas argues that, though transfers are not included on the list of campaign activities in the SOW, the SOW also does not explicitly prohibit their use.  [ECF No. 198 at 6].

Digitas has provided no evidence that creates a dispute of material fact as to whether warm transfers and Lead Forms were permitted under the relevant agreement.[5]  Digitas argues,

---

[5] Instead Digitas objects to the admissibility of certain evidence, including a screenshot from a vendor database that purports to show that "Lead Forms" were explicitly prohibited in the Digitas / Spanish Quotes campaign for Liberty Mutual.  Digitas claims that the screenshot lacks

for the first time, in its response to Liberty Mutual's motion for summary judgment that, because Liberty Mutual failed to sign the SOW, it raises an issue of fact concerning the binding nature of the SOW that precludes summary judgment. [Id. at 4].

The mere failure to sign is insufficient to establish that there was not a contract. "A written contract, signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance." Haufler v. Zotos, 845 N.E.2d 322, 331 (Mass. 2006). For the reasons that follow, it is clear that Digitas manifested acceptance of the SOW.

"[I]n an ordinary contract, where matters are left open, the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance." Vita v. Berman, DeValerio & Pease, LLP, 967 N.E.2d 1142, 1148 (Mass. App. Ct. 2012). The parties' "action under [an agreement] is often the strongest evidence of their meaning." Restatement (Second) of Contracts § 202, cmt. g (1981).

From Digitas' course of performance after learning of Mr. Johansen's initial complaints, the Court infers that it understood that warm transfers were prohibited under its agreement with Liberty Mutual. On multiple occasions, Digitas explicitly told Liberty Mutual that its campaign should not have used warm transfers, including informing Liberty Mutual that it did "not allow 'transfers' in [Digitas'] programs" and that "none of [its] campaigns" with Liberty Mutual "should have calling out as a feature." [ECF No. 195-18 at 3].

---

proper foundation in violation of Federal Rules of Evidence 601 and 602, is not properly authenticated under Rule 901, and contains hearsay under Rule 802. Liberty Mutual argues that its personnel laid the foundation for the screenshot, and verified it as being true and correct, in response to Mr. Johansen's Interrogatory No. 17. [ECF No. 195-7 at 17, 22–23]. "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). For the purposes of reviewing these motions for summary judgment, the Court does not consider the screenshot.

Spanish Quotes also understood that the Liberty Mutual campaign should not have included any transfers. Spanish Quotes informed Digitas that because the Liberty Mutual number had been placed on a warm transfer list, it would not charge Liberty Mutual for 237 paid calls. [ECF No. 195-20]. Because Spanish Quotes' sources were strictly prohibited from engaging in phone transfers, it excluded any transfers from its invoice to Liberty Mutual. [ECF No. 195-20].

Under the ASA, Spanish Quotes had a duty to indemnify against a claim that arose from a breach of warranty. [ECF No. 201-1 § 7.d]. Part of that agreement was Spanish Quotes' warranty "that . . . Services . . . will not . . . violate any other laws, rules or regulations of the United States." [ECF No. 201-1 § 7.a]. In its answer to Liberty Mutual's cross-claim, Spanish Quotes explained that, "the actions described by [Mr. Johansen] in the Complaint as violating the TCPA were the responsibility of [Spanish Quotes]." [ECF No. 122 ¶ 21].

Both Digitas and Spanish Quotes have therefore failed to demonstrate that there is a genuine dispute of material fact concerning whether they understood that transfers should not have been a part of their work for Liberty Mutual. To the contrary, communications between the companies demonstrate that both Spanish Quotes and Digitas understood that they should not have engaged in transfers as part of the Liberty Mutual campaign.

      3.      <u>Whether Liberty Mutual Satisfied the Conditions Precedent of the MSA's Indemnity Clause</u>

          i.      <u>As to Digitas</u>

Digitas argues that Liberty Mutual is not entitled to indemnity because it failed to satisfy the conditions precedent as specified in the MSA. [ECF No. 192 at 13; ECF No. 198 at 9]. A condition precedent which limits rights under a contract exists when the contract uses the phrase "on condition that" or similar words. <u>Mass. Mun. Wholesale Elec. Co. v. Town of Danvers</u>, 677

N.E.2d 283, 288 (Mass. 1991).  The MSA in this case explicitly stated that the indemnity was

"conditioned upon" three requirements:

> (i) prompt written notice by the indemnified party to the indemnifying party of any
> claim, action, or demand for which indemnity is claimed; (ii) the opportunity for
> complete control of the defense and settlement thereof by the indemnifying party;
> and (iii) such reasonable cooperation, at the indemnifying party's expense, by the
> indemnified party in the defense as the indemnifying party may request.

[ECF No. 195-2 at 11].  The parties do not dispute that Liberty Mutual provided prompt written

notice, as they agree that Liberty Mutual gave written notice of the Johansen lawsuit on August

7, 2015.  [ECF No. 199 ¶ 57].

Liberty Mutual argues that, since it gave notice of the Johansen lawsuit on August 7,

2015, Digitas has "had ample opportunity to assume complete control of the defense and

settlement of the case, but it never did."  [ECF No. 196 at 12].  Digitas, meanwhile, argues that

Liberty Mutual, "by refusing to turn over the defense of plaintiff's claims to Digitas, failed to

meet a condition precedent to Digitas' indemnity obligations."  [ECF No. 193 at 13; ECF No.

198 at 9].

Digitas has failed to provide any evidence to suggest that the terms of the contract mean

something more than what the plain meaning of the terms would suggest, "written notice . . .

[and] the opportunity for complete control of the defense and settlement thereof . . . ."  [ECF No.

194-1 at 10, § 14a].  Instead, it goes through a hypothetical of what Liberty Mutual should have

done under Digitas' interpretation of the indemnity provision, claiming that Liberty Mutual's

written notice of the claim to Digitas is not enough to fulfill the condition precedent and that

Liberty Mutual should have additionally "contacted Digitas to arrange for a turnover of the

defense to Digitas and lawyers of Digitas' choosing."  [ECF No. 192 at 13–14].

The Court has previously considered and rejected Digitas' argument when ruling on its motion to dismiss. [ECF No. 123]. In that order, the Court explained, "Although Digitas argues that Liberty Mutual never 'tendered' its defense, the MSA does not actually require that the request for defense be 'tendered.'" [Id. at 19]. The February 3, 2016, email from Liberty Mutual's counsel, [ECF No. 194-7 at 1], "provides sufficient evidence of 'the opportunity for complete control of the defense and settlement thereof' to defeat a motion to dismiss," [ECF No. 123 at 19].

The Supreme Judicial Court of Massachusetts has previously rejected similar arguments to the effect that a "plaintiff had the burden of proving a demand or request made upon the defendant to take over the defense of a pending law action or legal proceeding brought against the plaintiff . . . ." Trustees of N.Y., New Haven & Hartford Co. v. Tileston & Hollingsworth Co., 189 N.E.2d 522, 525 (Mass. 1963) (internal quotation marks omitted). Rather, "the indemnitee need give the indemnitor merely 'notice and an opportunity to defend' in order to bind the indemnitor to the result of a settlement or judgment concluded in the absence of the indemnitor." Id. at 526 (quoting Miller v. U.S. Fid. & Guar. Co., 197 N.E. 75, 77 (Mass. 1935)).

The MSA required that Liberty Mutual provide Digitas with "the *opportunity* for complete control of the defense and settlement . . . ." [ECF No. 194-1 at 10, § 14a (emphasis added)]. "When ascertaining the usual and ordinary meaning of contractual language, every word of the contract should be given meaning and effect; an interpretation that reduces certain words to the status of surplusage should be rejected." Lifespan Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 59 F. Supp. 3d 427, 445 (D.R.I. 2014); see also Valley Forge Ins. Co. v. Field, 670 F.3d 93, 99 (1st Cir. 2012) ("Every word in a[] . . . contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.")

(quoting Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009)). The Court will not read "opportunity" out of the agreement. The most straightforward interpretation of the provision is therefore that Liberty Mutual needed to notify Digitas of a claim arising from an alleged breach and then provide Digitas with the option of defending Liberty Mutual.

According to Digitas, Liberty Mutual repeatedly rejected reasonable offers to take over the defense. [ECF No. 192 at 14–15]. Though Digitas fails to provide record citations of such instances, the Court assumes that it is referring to emails on January 11 and 23, 2016, April 21, 2017, and November 20, 2017. See [ECF Nos. 194-4, 194-6, 194-11, 194-19]. In all of these instances, Digitas offered to assume the defense of the underlying claim, under certain terms.

On January 11, 2016, Digitas' counsel informed Liberty Mutual that it was "inclined to enter into an agreement with Liberty to fund 40% of the defense of the underlying TCPA action if Precise Leads does the same," as they thought it was important for "Liberty to continue to have some skin in the game." [ECF No. 194-4 at 1]. On January 23, Digitas again offered to take over the defense of the case and share the cost of defense with Precise Leads, [ECF No. 194-6 at 1], although it added that Liberty Mutual could participate in and had to cooperate with the defense at its own expense, despite the MSA specifying that the indemnifying party would cover the costs of cooperation, [id. at 1–2; ECF No. 194-1 at 10, § 14a].

On April 21, 2017, Digitas once more offered to take over the defense, with the understanding that Digitas would review Liberty Mutual's previous legal fees, with no agreement on whether Digitas would pay those fees, and that any dispute regarding indemnity would be addressed through private mediation. [ECF No. 194-11 at 1–2]. Digitas further accused Liberty Mutual of "declin[ing] to cooperate," and asserted that Liberty Mutual could not therefore claim that it was entitled to the indemnity referenced in the MSA. [Id. at 2–3].

On November 20, 2017, Digitas once again offered to take control of the defense conditioned upon certain extra-contractual terms. [ECF No. 194-19]. Those terms included that there would be no further obligation from Digitas to Liberty Mutual under the MSA unless there was a specific finding that Digitas had breached that agreement. [Id. at 1–2]. This conflicted with the MSA itself, which specified that "[c]ovenants contained in this Section shall continue in full force and effect notwithstanding the termination of this Agreement." [ECF No. 194-1 at 11, § 14c].

Contrary to Digitas' argument, all of these instances evidence the many opportunities that Digitas had to assume complete control of the defense, as was required under the MSA. Instead, Digitas balked at the prospect and made its alleged acceptance of its contractual duties dependent upon non-contractual terms. Because the contract merely requires the "opportunity for complete control" and not the actual "transfer" or "tender" of the defense, Liberty Mutual met its condition precedent obligations needed to receive the benefits of Digitas' indemnification, the precise terms of which were not set forth in the MSA.

ii.    As to Spanish Quotes

Spanish Quotes argues that Liberty Mutual's claim of indemnity fails because (1) Digitas failed to pay outstanding invoices owed to Spanish Quotes, and (2) Liberty Mutual allegedly failed to pay Digitas for the outstanding invoices. [ECF No. 200 at 8]. The Court does not find either argument persuasive.

First, Spanish Quotes argues that, because Digitas was acting as Liberty Mutual's agent in its dealings with Spanish Quotes, Liberty Mutual is bound by the consequences of Digitas' failure to pay Spanish Quotes. [Id. at 9]. As a matter of law, a total failure to pay constitutes a material breach. Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 11–12 (1st Cir. 2006).

"[A] principal who puts an agent in a position which enables the agent, while apparently acting within his authority, to commit fraud on a third party is subject to liability to the third party." Kansallis Fin. Ltd. v. Fern, 659 N.E.2d 731, 736 (Mass. 1996). A "principal can . . . ratify an agent's conduct after the fact, by acquiesc[ing] in the agent's action, or fail[ing] promptly to disavow the unauthorized conduct after disclosure of material facts." Fergus v. Ross, 79 N.E.3d 421, 425 (Mass. 2017) (internal quotation marks omitted, alterations in original). Because Spanish Quotes argues that Liberty Mutual approved Digitas' nonpayment, it bears the burden of demonstrating that Liberty Mutual had knowledge of and subsequently ratified the nonpayment. Licata v. GGNSC Malden Dexter LLC, 2 N.E.3d 840, 847–48 (Mass. 2014).

Spanish Quotes fails to demonstrate that a reasonable third party could conclude that Digitas' failure to pay was with the acquiescence or approval of Liberty Mutual. See [ECF No. 200 at 9–11]. Spanish Quotes has pointed to nothing in the summary judgment record that would support the notion that Digitas withheld its payment at the direction of, or under the authority of, Liberty Mutual. Meanwhile, Liberty Mutual has provided emails between it and Spanish Quotes, in which it informs Spanish Quotes that it has brought the nonpayment to the attention of Digitas' Vice President and to "keep [Liberty Mutual] posted if the process doesn't improve." [ECF No. 201-2 at 2].

Second, Spanish Quotes argues that, according to Digitas' arguments in a related state-court action, Liberty Mutual may have failed to pay Digitas. [ECF No. 200 at 11]. Specifically, Digitas alleged in a state court proceeding that Spanish Quotes could not prove that Liberty Mutual had actually paid Digitas. [Id.]. Neither Spanish Quotes nor Digitas itself has provided any evidence that would suggest that Liberty Mutual failed to pay Digitas. The argument is therefore insufficient to defeat Liberty Mutual's motion for summary judgment. See ICONICS,

Inc. v. Massaro, 192 F. Supp. 3d 254, 262 (D. Mass. 2016) ("Once the moving party has carried its burden, the burden shifts to the non-moving party, which must provide specific and supported evidence of disputed material facts. The non-moving party 'may not rest upon mere allegation or denials' and must 'establish a trial-worthy issue.'" (internal citation omitted) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993))). Therefore, the Court rejects both of Spanish Quotes' arguments opposing summary judgment and consequently finds that Liberty Mutual performed as required to receive the indemnity referenced in the ASA.

4.      Whether Liberty Mutual has an Absolute Right to Indemnity

Liberty Mutual argues that it had a right to insist on full and complete indemnity, but that Digitas only offered partial indemnity. [ECF No. 203 at 14]. Digitas argues that its duty to indemnify arises only if Liberty Mutual's losses are related to Digitas' breach of the MSA and that, because the claim was settled, there has been no finding that Liberty Mutual's loss was due to Digitas' breach of the MSA. [ECF No. 192 at 15–16].

The MSA's indemnity provision specifically anticipates that Digitas would have to indemnify Liberty Mutual in the event of a settlement of claims that arose due to Digitas' breach of the agreement. The provision specifies that Digitas would "indemnify . . . the other party . . . from and against any and all third party claims, damages, liabilities costs and expenses . . . to the extent arising out of any breach of any warranty . . . conditioned upon . . . the opportunity for complete control of the defense and settlement thereof . . . ." [ECF No. 194-1 at 10, § 14a]. The Court has already determined that Digitas was given the opportunity for complete control of the defense, and now has to decide whether Digitas also had the requisite opportunity for complete control of the settlement.

Digitas argues that Liberty Mutual took complete control of the settlement negotiations, "fly[ing] in the face of the MSA's indemnity provision." [ECF No. 192 at 11]. From the evidence attached to Digitas' own motion for summary judgment, however, the Court finds that Liberty Mutual provided an opportunity for Digitas to control the settlement negotiations. For example, Liberty Mutual informed Digitas that it could reach out to Mr. Johansen's counsel directly, but Digitas did not do so. [ECF No. 194-22 at 1]. Liberty Mutual also brought numerous settlement offers and counteroffers to Mr. Johansen's counsel at the request of Digitas and Precise Leads, showing that Liberty Mutual was willing to act at the direction of Digitas and Precise Leads. [ECF No. 194-20 at 4–5]. Liberty Mutual therefore fulfilled its obligations under the MSA, despite Digitas' continued refusal to act.

### 5.  Whether the MSA Indemnity Provision Provides Attorney's Fees

Digitas also argues that, because the MSA only relates to fees incurred and claimed by "the third party," "Liberty may . . . not seek to recover *its own* attorneys' fees under the contractual indemnity provision." [ECF No. 192 at 16–17 (emphasis in original)]. Digitas further argues that "Liberty's inability to recover its fees is itself proof that Liberty, by failing to turn over the defense, did not meet a condition precedent to indemnity. . . . Liberty can only *avoid* paying attorneys' fees by turning over the defense. Liberty cannot recover those fees under the indemnity provision of the MSA." [ECF No. 192 at 17 (emphasis in original)]. Liberty Mutual argues that nothing in the MSA limits the scope of indemnifiable items to what a third party "incurred and claimed." [ECF No. 203 at 16].

 "Massachusetts law . . . has not adopted a special rule that requires that indemnity contracts be read as only applying to third parties unless there is explicitly language to the contrary." Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 216 (1st Cir. 2006).

Therefore, the Court will look to the plain meaning of the indemnity provision. Again, the relevant provision states that "Each party agrees to indemnify and hold harmless the other party . . . from and against any and all third party claims, damages, liabilities, costs and expenses, including reasonable legal fees and expenses . . . ." [ECF No. 194-1 at 10, § 14a].

According to Digitas, such language only refers to paying a potential third-party plaintiff's attorney's fees post judgment. Nothing in the provision so narrowly limits the applicable attorney's fees. Similar language has been found to include indemnification for attorney's fees in this district. See City of Marlborough, Mass. v. WeCare Envtl., LLC, 109 F. Supp. 3d 329, 338–39 (D. Mass. 2015) (finding that party was entitled to indemnification for attorney's fees when agreement provided that the parties would "protect, indemnify, and hold [each other] harmless . . . from and against any and all costs and expenses (including, but not limited to, reasonable attorneys' fees and court costs incurred in any court or administrative proceeding or arbitration), claims and liabilities arising out of (i) the performance (or non-performance) of the [parties'] obligations under this Agreement").

Digitas' interpretation would conflict with the language of the indemnity provision. Under Digitas' reading, Liberty Mutual could give notice and allow an opportunity for complete control of the defense, but if Digitas chose not to defend Liberty Mutual, then Digitas could avoid having to cover attorney's fees. Indemnification "provisions are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Urban Inv. & Dev. Co. v. Turner Constr. Co., 616 N.E.2d 829, 834 (Mass. 1993). The Court will not eviscerate the indemnity provision by finding that it was essentially permissive, allowing parties to defend one another in the event that they decided to take control

of the defense.  Liberty Mutual is thus entitled to indemnification for its attorney's fees incurred in defending against the Johansen lawsuit.

### B.    Liberty Mutual's Breach of Contract Claims

#### 1.    As to Digitas

Liberty Mutual originally claimed breach of contract against Digitas in its third-party complaint.  [ECF No. 61 ¶¶ 50–55 (Third-Party Compl.); ECF No. 203 at 18].  In its motion for summary judgment it then argued that Digitas breached its contractual obligation to indemnify.  [ECF No. 196 at 5–14].  Liberty Mutual's breach of contract claim therefore relies on the same breach discussed above.  Digitas argues that "[t]o the extent that its breach of contract claim is coextensive with the contractual indemnity claim, Liberty cannot recover from Digitas for the same reasons stated . . . ."  [ECF No. 192 at 18].  Having determined that Digitas breached its contractual duty to indemnify, the Court likewise finds that Digitas breached its contract with Liberty Mutual by failing to indemnify.

#### 2.  As to Spanish Quotes

Under the ASA, Spanish Quotes "agree[d] to indemnify, defend and hold harmless [Digitas] . . . as well as any [Digitas] Client . . . from and against any and all claims, damages, liabilities, losses and/or expenses, including reasonable attorney fees . . . incurred by [Digitas] and/or its Client and arising from a breach of the foregoing warranties, breach of the Privacy and Data Security Terms (if applicable) or any other material breach of this Agreement."  [ECF No. 197 ¶ 13; ECF No. 202 ¶ 13].  Spanish Quotes' "performance [was to] conform to the standards, criteria, specifications and procedures described in the applicable Scope of Work, or as otherwise communicated to" Spanish Quotes.  [ECF No. 195-4 at 4, § 7a].  Finally, Spanish Quotes'

"Services . . . [would] not . . . violate any other laws, rules or regulations of the United States." [ECF No. 197 ¶10; ECF No. 202 ¶ 10].

Spanish Quotes therefore needed to defend or indemnify Liberty Mutual for any "claim" arising from a breach of the ASA, which included a violation of law. It is clear from the evidence submitted that Spanish Quotes understood that its work for Liberty Mutual should not have included transfers. The company even declined to charge for certain services, because it could not verify which services might have included transfers. One of those calls then led to a claim against Liberty Mutual and Spanish Quotes for alleged violations of the TCPA, which Spanish Quotes admitted in its answer "were the responsibility of" Spanish Quotes. [ECF No. 122 ¶ 21]. Spanish Quotes then failed to defend or indemnify.

Spanish Quotes argues that the indemnity provision only applies in instances where it has been determined that there was a violation of law. The provision is clearly not intended to be understood solely to cover those instances in which there is an actual determination of a violation. Otherwise, the ASA would unnecessarily provide that Spanish Quotes had a duty to defend Liberty Mutual only in cases where it had already been determined that Spanish Quotes violated the law. Similar to the reasons why the Court will not read the MSA to apply only to third-party claims, the Court will also not read the ASA to apply only to cases in which there has been a judicial determination of a violation of law.

## C.    Liberty Mutual's Negligence Claim

Finally, Liberty Mutual argues that it is entitled to summary judgment on its negligence claim. In its third-party complaint, Liberty Mutual claims that Digitas negligently violated the TCPA in its performance of its duties under the MSA. [ECF No. 61 ¶¶ 63–68 (Third-Party

Compl.)].  Liberty Mutual therefore seeks to recover damages to the extent that it is found liable to Mr. Johansen for the alleged TCPA violations.  [Id. ¶ 69].

Because the parties have already settled Mr. Johansen's underlying allegations, Liberty Mutual will not be found liable to Mr. Johansen for any alleged TCPA violations.  Because the Court now does not have to decide whether Liberty Mutual is liable to Mr. Johansen, Liberty Mutual will not be entitled to relief "to the extent that [it] is found liable to [Johansen] for damages arising from any" violations of the TCPA.  [Id. ¶ 67 (Third-Party Compl.)].  Therefore, the issue is moot.

## IV.    CONCLUSION

Accordingly, Liberty Mutual's motion for summary judgment [ECF No. 195] is GRANTED  in part, insofar as the Court finds that Digitas and Spanish Quotes violated their contractual duties to indemnify Liberty Mutual, and DENIED in part, insofar as its claim of negligence was premised upon a finding that it was liable to Mr. Johansen for violating the TCPA.  Likewise, Digitas' motion for summary judgment [ECF No. 191] is DENIED in part and GRANTED in part.

**SO ORDERED.**

October 2, 2019                                          /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE